JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Rashawn Watson[1] appeals his convictions for felony murder and felonious assault. He assigns the following three errors for our review:
"I. The trial court erred in denying appellant's motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction."
"II. Appellant's convictions are against the manifest weight of the evidence."
"III. The trial court erred by refusing to instruct the jury on the lesser included offense of reckless homicide which denied appellant's right to a fair trial."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Watson's conviction. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Watson on one count of aggravated murder, one count of felony murder, one count of felonious assault, and one count of felonious assault with a deadly weapon. Watson entered a plea of not guilty. The matter proceeded to a jury trial.
 {¶ 4} The evidence at trial indicated that on August 20, 2004, Spencer Miller died after being punched several times by Rashawn Watson. Watson's neighbor, Lorenzo Edwards, testified that on that evening he was talking with Watson in front of Watson's home. Edwards admitted that prior to speaking with Watson, he had drunk several beers and smoked a joint. As Edwards and Watson talked, Miller approached Watson to speak with him. Edwards believed it was a personal conversation, therefore, he walked away. As he turned his back, he heard Watson say in a loud voice, "Don't be playing me that way." Watson then punched Miller once, causing Miller to fall to the ground. Watson pulled Miller up by his shirt and continued to pummel him. Edwards testified he attempted to put Watson in a bear hug in order to stop the assault. However, Watson broke free. Edwards then ran to get Watson's cousin, Henry Davis, who lived next door to Watson. When Davis returned with Edwards, Watson was still visibly angry. According to Edwards, Davis told Watson to "cool out" and placed a towel on Miller's bloodied head. Miller was not moving. Watson left the scene.
 {¶ 5} Edwards admitted that in his initial statement to the police, he stated Miller shoved Watson first. However, he explained at trial that he made the false statement in order to protect Watson. After he obtained counsel, he made a second statement in which he told the truth, that Watson was the aggressor.
 {¶ 6} Henry Davis testified he walked outside after arguing with his mother and observed Spencer Miller laying on the ground. According to Davis, Watson was not at the scene.
 {¶ 7} Anthony Holland testified he was at his grandmother's house when he heard yelling outside. He went outside and saw a bunch of people gathered around Spencer Miller's body. In his written statement to police, he claimed he observed Watson jumping up and down with bloody fists, screaming "Somebody better talk to that nigger!" At trial, Holland contended he told the detectives he observed Lorenzo Edwards jumping up and down, screaming, "Rashawn just f***** this nigger up!" He denied seeing Watson on the scene.
 {¶ 8} Watson's mother and sister, Mary and LaTonya Watson, both testified they were at home at the time of the incident. In LaTonya's statement to the police, she stated she had overheard her brother and Miller arguing and saw them "tussling" on the sidewalk. She also stated she observed her brother running from the scene. However, at trial, she denied making these statements.
 {¶ 9} Watson's mother testified she observed Spencer push Watson onto the ground, but that she then went inside the house and did not see Watson hit Spencer. However, in her statement to police she stated she saw her son push Spencer Miller to the ground and begin hitting him, causing her to implore Watson to stop. At trial, she denied making these statements.
 {¶ 10} Forensic Pathologist, Dr. Frank Miller, testified that the victim had been hit with such force, his upper jaw had been separated from his skull. Dr. Miller concluded that the victim suffered a severe beating to the face and died as a result of the facial injuries, which ruptured facial arteries and the two main arteries leading to the brain. He stated that normally these type of injuries are the result of car accidents or blunt force trauma and that a great deal of force is needed to cause these injuries with a closed fist. Dr. Miller, viewing photographs of Watson's hands, testified that the injuries depicted on Watson's hands were consistent with causing the type of injuries sustained by the victim.
 {¶ 11} Watson testified that when he was 16 years old he was convicted of felonious assault and served eight years in prison. According to Watson, earlier that day Miller had borrowed twenty-five dollars. He promised to pay Watson back later that evening. Miller become agitated when Watson later asked for the money. Watson stated that Miller pushed him on the ground and punched him in the face. He claimed he struck Miller in self defense. At the time, Watson was twenty-six years old, 6'1" and 198 pounds. Comparatively, Miller was 52 years old, 5'10" and 138 pounds. Watson admitted that after the murder, he went into hiding for several days because he knew the police were looking for him.
 {¶ 12} At the close of the evidence, the State dismissed the felonious assault with a deadly weapon count. The jury acquitted Watson of aggravated murder and the lesser included offense of murder, but found him guilty of felony murder and felonious assault. The trial court merged the counts for sentencing purposes and sentenced Watson to 15 years to life in prison.
 Insufficient Evidence/Manifest Weight {¶ 13} In his first and second assigned errors, Watson contends his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.
 {¶ 14} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[2]
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[3]
 {¶ 15} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[4] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 16} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins:[5]
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 17} Watson first contends there was no evidence he "purposely" intended to kill Miller. However, Watson was convicted of felony murder, which does not require purposeful intent.[6] R.C. 2903.02(B), defines felony murder as "no person shall cause the death of another as a proximate result of the offender committing or attempting to commit an offense of violence that is a felony of the first or second degree." Therefore, it was not necessary for the State to establish that Watson purposely caused the victim's death. The State simply needed to prove that Watson committed a first or second-degree felony, resulting in the victim's death.
 {¶ 18} A punch to the face, resulting in serious injuries to the victim, can support a conviction for felonious assault.[7] In the instant case, the State proved that Watson severely beat the victim and that the victim died as a result of the injuries sustained from the assault. Therefore, the evidence supports Watson's conviction for felony murder.
 {¶ 19} Watson also contends he did not possess the requisite mens rea for committing felonious assault. R.C. 2903.11(A)(1) defines felonious assault as: "no person shall knowingly cause serious physical harm to another * * *." Pursuant to R.C.2901.22(B), a person acts knowingly, "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 20} The evidence showed that Watson struck the victim with such force that he broke the victim's jaw and ruptured his arteries leading to his brain, killing him. Given the severity of the injuries, it cannot be reasonably argued that Watson did not realize the force of such blows would cause serious injury.
 {¶ 21} Watson also contends that Edwards' testimony was not credible because he changed his original statement to police. In his first statement, he stated that the victim shoved and swung at Watson first. Edwards then submitted a second statement in which he stated Watson was the aggressor. At trial, Edwards explained he lied in his first statement in order to protect Watson. The jury was aware Edwards' changed his story and apparently believed he was telling the truth when he testified and gave his second statement. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility.[8]
Accordingly, on issues of credibility, we defer to the jury.
 {¶ 22} Moreover, even if the victim did push and/or punch Watson first, there was no evidence that the victim provoked Watson into the use of deadly force. In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury.[9]
As the Ohio Supreme Court in State v. Deem explained:
"Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.
In the instant case, the trial court did instruct the jury regarding aggravated assault. The jury, however, rejected the opportunity to find Watson guilty of this lesser offense by finding Watson guilty of felonious assault. We cannot conclude the jury erred in doing so. Given the physical difference in size between Miller and Watson, it's doubtful Miller could have struck Watson in a manner that would incite the use of lethal force. Further, Watson testified his argument with Miller concerned the $25 Miller borrowed. This is not an amount that would reasonably incite the use of deadly force. Accordingly, Watson's first and second assigned errors are overruled.
 Jury Instruction {¶ 23} In his third assigned error, Watson contends he was denied a fair trial because the trial court refused to instruct the jury on reckless homicide, which is a lesser included offense of felony murder.
 {¶ 24} We agree reckless homicide is a lesser included offense of felony murder.[10]
 {¶ 25} However, even though an offense may be a lesser included offense of another, a charge on the lesser included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.[11] We find no evidence in the record to support an instruction that Watson acted recklessly, rather than knowingly.
 {¶ 26} The difference between felony murder and reckless homicide is in the requisite mens rea. As noted earlier, one acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person acts recklessly, however, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.[12]
 {¶ 27} The evidence indicates that Watson continued to punch Miller after the first forceful blow, which knocked Miller off his feet. He also struck Miller with such force, he severed Miller's jaw from his skull and ruptured arteries leading to his brain. Although Watson may not have intended to kill Miller, it is apparent that he intended to injure him and was not merely reckless. Thus, the trial court did not err in refusing to instruct the jury on reckless homicide because the evidence strongly supports the felony-murder conviction. Accordingly, Watson's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Kilbane, J., Concur.
[1] A review of the record indicates that Watson was indicted as "Rashawn" Watson, but is referred to throughout the court proceedings as "Rayshawn" Watson.
[2] (1978), 55 Ohio St.2d 261, syllabus.
[3] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[4] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[6] State v. Miller, 99 Ohio St.3d 384 at ¶ 33,2002-Ohio-4931.
[7] See, e.g., State v. Shepherd, 11th Dist. No. 2003-A-0028,2006-Ohio-4315; State v. Bennett, 7th Dist. No. 04-MA-184, 2000-Ohio-3566, at ¶¶ 46, 64; State v. Gary, 11th Dist. No. 2003-T-0124, 2004-Ohio-6686, at ¶¶ 3, 10, 24-25.
[8] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[9] State v. Deem (1988), 40 Ohio St. 3d 205, paragraph four of the syllabus.
[10] State v. Hunter, Cuyahoga App. No. 86048, 2006-Ohio-20;State v. Jones, Cuyahoga App. No. 80737, 2002-Ohio-6045; Statev. Berry, Cuyahoga App. No. 83756, 2004-Ohio-5485.
[11] State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus; State v. Kidder (1987), 32 Ohio St.3d 279.
[12] R.C. 2901.22(C).