[Cite as *State v. Williams*, 2013-Ohio-573.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98210**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ANTHONY WILLIAMS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552836

**BEFORE:** Keough, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 21, 2013

**ATTORNEY FOR APPELLANT**

Michael H. Murphy
20325 Center Ridge Road, Suite 512
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Alison Foy
       Gregory Mussman
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Anthony Williams ("Williams"), appeals his convictions for felonious assault, aggravated burglary, and kidnapping. For the reasons that follow, we affirm.

{¶2} In August 2011, Williams was indicted with two counts of rape and kidnapping, and one count each of felonious assault and aggravated burglary. The kidnapping, felonious assault, and aggravated burglary charges contained sexual motivation specifications. The matter proceeded to a bench trial, where the court heard the following relevant evidence.

{¶3} In the early morning of June 28, 2011, police and paramedics responded to a call to assist a female who reported she had been assaulted. Stacie Nofer, a Cleveland paramedic, testified that the victim, Jennita Morgan, had bleeding cuts from her face and from behind her ear that required stitches. According to Nofer, Morgan was emotionally upset and during the course of treatment, told her that she was assaulted and raped by a man named "Skank."

{¶4} Officer Thomas Smith testified that when he arrived on the scene, he observed Morgan receiving medical treatment for two large gashes near her left eye. According to Officer Smith, Morgan was very upset, crying, and shaking. Morgan told Officer Smith that her friend "Skank" did this to her. She stated to Officer Smith that she was sitting on her bed with Skank when he violently started punching her and then

had raped her. Officer Smith went inside the house to the upstairs bedroom, where he found Morgan's friend, Andre Bradley, sitting on her bed. Although Morgan told Officer Smith that the assault and rape occurred in the bedroom, he noticed that the living room was in disarray; there was broken glass and blood on the floor, and the furniture was kicked.

{¶5} Andre Bradley ("Bradley") testified that he has known Williams from the neighborhood for about six years. He stated that Williams's nickname is "Skank." Bradley testified that he and Morgan are friends who occasionally hang out together, drink, and talk. Bradley testified he was at Morgan's house in the early morning hours of June 28, 2011 because she had called him earlier and asked him to come over. When he arrived, Morgan answered the door. According to Bradley, she was not upset or injured, and was acting normally. Upon entering the home, he encountered a male he did not know who was seated at a table. After he and Morgan had a brief conversation, Morgan went upstairs. Bradley testified that he did not hear any kind of "scuffle" upstairs, but he could hear Morgan having a private conversation with another man. Morgan then came back downstairs and Williams followed asking her about his missing money. Bradley then overheard Morgan and Williams arguing in the dining room. When he heard the argument turn physical, he walked into the dining room and saw Morgan and Williams pushing, shoving, and hitting each other. According to Bradley, Williams was grabbing and holding Morgan to keep her from attacking him because

Morgan was "a lot out of control." He stated that they were slapping and punching each other, "both wild[ly] swinging," and described it as a "cat fight."

{¶6} At some point, Morgan was able to break free from Williams and she began throwing things at him including a glass vase. According to Bradley, Williams "then started in." Bradley agreed that Morgan "provoked" Williams and testified that Williams punched Morgan in the face, causing the area around her eye to split open, only after Morgan started throwing things at hin. After Williams left, Bradley noticed the injury to Morgan's face and insisted on calling the paramedics. Bradley testified that he told Morgan that she had to "stop doing what she was doing" because "look at you" — meaning that she was "kind of busted up."

{¶7} Morgan testified that she had a criminal history and had been using crack cocaine since 2009. She testified that in the early morning of June 28, 2011, Williams came over to her house to exchange sex for crack cocaine, which they routinely did twice a week. She recalled that Williams gave her the crack and they engaged in consensual sex. About ten minutes later, Williams wanted to have sex again, but Morgan said "no." According to Morgan, Williams became abusive and although she said "no," Williams "jumped on me anyway." Williams then fell asleep.

{¶8} After getting up from the bed, she noticed that her friend "Dre" (Bradley) and another gentleman were standing at her back window screaming her name. She let them inside her home and received $20 from Bradley, which she took upstairs and exchanged

for a rock of crack cocaine. She returned with the rock for Bradley, and they smoked it.

{¶9} According to Morgan, Williams then came downstairs and was upset about money that was missing from his wallet. Williams attempted to get Morgan to come back upstairs to talk about the missing money, but she refused. Nevertheless, she went upstairs with Williams where he threatened her. Morgan then came back downstairs and Williams followed her, wearing a pair of leather gloves and stating, "I'm about to whop this bitch ass." Morgan testified that Williams began holding and attacking her and in order to defend herself, she began throwing things like a vase and a white crystal ball at him. She said that Williams continued to punch her all the way to the door and then her son, who was in the basement with her nephew, came upstairs and chased Williams with a knife.

{¶10} After the incident, Morgan called 911 at the insistence of Bradley. She testified that she was taken to Fairview Hospital where she received stitches to her eye and behind her ear. She testified about and showed the court the scar that remained around her eye due to the assault.

{¶11} During her testimony, Morgan admitted she was "very[,] very high" and "couldn't remember a lot of stuff" about that night. She admitted that she lied to the police and hospital nurses when she said that Williams strangled her. She testified that she made this statement because she was mad at Williams and to bolster the rape claim. She further admitted at trial that she did not disclose to police that the first sexual

encounter was consensual, that the first encounter was done in exchange for crack, or that she was high on crack. However, Morgan maintained that Williams beat her in the bedroom before the second sexual encounter, and because she said "no," it was rape.

{¶12} The State also called two sexual assault nurse examiners from Fairview Hospital to testify regarding their examination and treatment of Morgan. The final witness was a Cleveland police sex crimes officer who testified about her interactions with Morgan after the incident, including taking Morgan's statement.

{¶13} At the close of the State's case, the trial court granted Williams's Crim.R. 29 motion for judgment of acquittal on one count of rape. Following the close of all evidence, the trial court found Williams not guilty of the remaining rape count, one count of kidnapping, and all the sexual motivation specifications. However, Williams was found guilty of felonious assault, aggravated burglary, and the remaining kidnapping charge. The trial court filed its written verdict, which included findings of fact and conclusions of law, into the record. Williams was sentenced to five years in prison.

{¶14} He now appeals his convictions, raising four assignments of error.

I. Sufficiency and Manifest Weight of the Evidence

{¶15} In his first, second, and third assignments of error, Williams contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal, there was insufficient evidence to support his convictions, and his convictions were against the manifest weight of the evidence. We consider these assignments of error together because they are related.

{¶16} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.* at 388.

## A. Felonious Assault vs. Aggravated Assault

{¶18} Williams was convicted of felonious assault in violation of R.C. 2903.11(A), which provides that "no person shall knowingly cause serious physical harm to another." As applicable here, "serious physical harm" is defined as "any physical harm that involves some permanent disfigurement or that involves some temporary,

serious disfigurement." R.C. 2901.01(A)(5)(d). "Physical harm" means any injury, regardless of duration. R.C. 2901.01(A)(3).

{¶19} In this case, the evidence showed that Williams punched Morgan in the head and face, causing the area around her eye to split open and also causing injury behind her ear. When the paramedics arrived, they found these injuries bleeding. Morgan was transported to Fairview Hospital where she was treated and received stitches around her eye and behind her ear to close the wounds. This court has repeatedly held that the element of serious physical harm is satisfied when the evidence shows that the victim sustained injuries requiring medical treatment, including stitches. *See, e.g., State v. Churchwell*, 8th Dist. No. 88171, 2007-Ohio-1600, ¶ 28.

{¶20} Accordingly, Williams's conviction for felonious assault was supported by sufficient evidence and was not against the manifest weight of the evidence. However, Williams does not challenge his conviction for felonious assault, per se; rather, he contends the evidence supports a conviction for the "lesser included" or "inferior" offense of aggravated assault.

{¶21} The offenses of aggravated assault and felonious assault are comprised of the same elements, except aggravated assault contains the mitigating circumstance of "serious provocation." Accordingly, aggravated assault is an inferior offense of felonious assault. *See State v. Searles*, 8th Dist. No. 96549, 2011-Ohio-6275, ¶ 18. "To mitigate felonious assault to aggravated assault, the defendant must affirmatively prove by a preponderance of the evidence either sudden passion or sudden fit of rage

brought on by the victim's serious provocation reasonably sufficient to incite the defendant into using deadly force." *United States v. Rodriguez*, 664 F.3d 1032, 1039 (6th Cir.2011), citing R.C. 2901.05; *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988).

> Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.

*State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (8th Dist.1982), paragraph five of the syllabus.

{¶22} Although the trial court considered the offense of aggravated assault as a lesser included offense, it is clear from the court's verdict that the mitigating factor of serious provocation was not proven. The trial court stated:

> The Court believes, however, that all the elements of Felonious Assault have been met and that the element of "serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force" is not present in this matter with regard to a small amount of missing money.

{¶23} We agree with the trial court's conclusion that the circumstance of "serious provocation" was not satisfied by Williams under the facts of the case. Williams asserted at trial and on appeal that the missing money and the fact that Morgan was throwing items at him qualified as "serious provocation" that was "reasonably sufficient" to put him in a sudden fit of rage. While the evidence showed that Williams believed

Morgan stole $20 from his wallet and Morgan threw a vase and a white crystal ball at him, these actions do not constitute "serious provocation" that are "reasonably sufficient to incite [Williams] into using deadly force." *See, e.g., State v. Watson*, 8th Dist. No. 87281, 2006-Ohio-5738 (dispute over $25 is not an amount that would reasonably incite the use of deadly force).

{¶24} Moreover, we find it questionable whether Williams's punching of Morgan constituted deadly force. *Compare State v. Triplett*, 192 Ohio App.3d 600, 2011-Ohio-816, 949 N.E.2d 1058 (8th Dist.) (one punch, even when death occurs, is not comparable to deadly force; knowingly causing serious harm does not automatically equate to deadly force) *with Watson* (multiple punches to victim's head constitute deadly force where initial punch knocks victim down and severs jaw from skull).

{¶25} Accordingly, the trial court properly rejected the inferior offense of aggravated assault, and the evidence supports Williams's conviction for felonious assault.

### B. Aggravated Burglary

{¶26} Williams was also convicted of aggravated burglary in violation of R.C. 2911.11, which provides in pertinent part, that "no person by force, stealth, or deception, shall trespass in an occupied structure * * * , when another person * * * is present, with purpose to commit in the structure * * * any criminal offense, if * * * : (1) the offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶27} The trial court found that although Williams was initially permitted to be inside Morgan's residence, the permission was revoked when he began physically

assaulting Morgan. The Ohio Supreme Court has held that "a privilege once granted may be revoked." *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987). In *State v. Lofton*, 8th Dist. No. 91330, 2009-Ohio-3732, this court found that although the defendant entered the victim's home with permission, his privilege to be in the victim's home after he began assaulting her was revoked. This revocation of permission and privilege established the trespass element of burglary. *Id*. at ¶ 45.

{¶28} In this case, any permission given to Williams was revoked even prior to the physical altercation when Williams stated to Morgan and Bradley that he was going to "whop this bitch ass." This threat to inflict harm was sufficient to revoke Williams's privilege to be present. The evidence that Williams then remained in Morgan's home and then assaulted her to the point of causing serious physical harm to her face and head, was sufficient to support Williams's conviction for aggravated burglary. Moreover, his conviction was not against the manifest weight of the evidence.

## C. Kidnapping

{¶29} Williams was also convicted of kidnapping in violation of R.C. 2905.01(A)(2). The indictment read that Williams "did, by force, threat, or deception, * * * purposely remove [Morgan] from the place where the other person is found or restrain the liberty of her for the purpose of facilitating the commission of any felony to wit: Rape, R.C. 2907.02 and/or Felonious Assault R.C. 2903.11 or flight thereafter." Because Williams was found not guilty of rape, the attendant felony would be felonious assault.

**{¶30}** We previously determined that Williams's conviction for felonious assault was supported by the evidence because Williams caused serious physical harm to Morgan when he punched her in the head and face, causing injury to her eye and ear. The issue presented by Williams on appeal is whether he was restraining Morgan when he caused these injuries, thus satisfying the elements of kidnapping. Williams contends that Bradley's testimony established that Morgan had "broken free" from him when he struck her in the eye, causing it to split open. Moreover, Williams argues that any testimony given by Morgan was incredible.

**{¶31}** Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 1996-Ohio-222, 661 N.E.2d 1068, and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). The trier of fact is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. No. 93593, 2010-Ohio-4006, ¶ 16.

**{¶32}** In this case, the trial court entered into the record extensive findings of fact and conclusions of law. The trial court found that the testimony revealed that Williams grabbed Morgan and held her during the physical assault. Specifically, the court stated, "The Court further finds, based upon the testimony of Ms. Morgan and Mr. Bradley, that

force was clearly used by the Defendant and that the restraint and force were for the purposes of committing a felony, which in this matter would be Felonious Assault."

**{¶33}** After a thorough review of the testimony presented at trial, we find that sufficient evidence was presented supporting Williams's conviction for kidnapping and that the conviction is not against the manifest weight of the evidence.

**{¶34}** Morgan's credibility was questionable given that she testified she was "very[,] very high" and "couldn't remember a lot of stuff about that night." Furthermore, she admitted that she lied to the police about important details relevant to the investigation. Nevertheless, the trial court also heard testimony by Morgan that Williams held her and punched her four or five times in the face. He continued punching her until he left. This testimony was corroborated by the physical evidence, as well as Bradley's testimony.

**{¶35}** Bradley testified he heard Morgan and Williams having a conversation upstairs and when Williams came downstairs, he was accusing Morgan of taking his money. Bradley was in the kitchen when Morgan and Williams were arguing in the dining room. When he heard physical contact between them, he walked into the dining room and saw them pushing, shoving, and hitting each other. Bradley testified that Williams grabbed at Morgan and held on to her to keep her from attacking him because she was "a lot out of control." Bradley testified that they were "both wild[ly] swinging" and described it as a "cat fight." When Morgan broke free from Williams's grasp, she

started throwing things at him, including a vase. Williams then punched Morgan in the face, causing the area around her eye area to split open.

{¶36} Morgan suffered serious physical harm to both her eye area and behind her ear. Although there was testimony that Williams was not holding onto Morgan when he punched her in the eye, testimony exists that he was holding onto her when he first began hitting her. This initial combat could reasonably explain the subsequent injury behind her ear that also required stitches. Accordingly, we do not find that the court lost its way in convicting Williams of kidnapping.

{¶37} Williams's first, second, and third assignments of error are overruled.

II.   Ineffective Assistance of Counsel

{¶38} In his fourth assignment of error, Williams contends he was denied effective assistance of trial counsel.

{¶39} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there

are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id*. at 689. Trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶40} In this case, Williams contends that his trial counsel was ineffective for failing "to bring up evidence that could have been presented at trial that would have at least mitigated the sentence, if not resulted in lesser charges." He contends that his counsel did not call any witnesses or introduce any exhibits.

{¶41} But Williams fails to identify what witnesses could have been called, what their testimony would have provided to the case, what exhibits were needed, and how their content would have related to the case. Furthermore, he fails to demonstrate how he was prejudiced as a result of his trial counsel's failure to produce these witnesses or exhibits.

{¶42} We find that Williams was not denied effective assistance of counsel. His trial counsel successfully defended two counts of rape and a count of kidnapping by extensively and effectively cross-examining all witnesses, including the victim and the eyewitness. We fail to see and Williams has not demonstrated how his trial counsel could have done more considering the facts and evidence in the case. Accordingly, both prongs of *Strickland* have not been satisfied.

{¶43} The final assignment of error is therefore overruled.

**{¶44}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR