[Cite as *State v. Sanders*, 2024-Ohio-3365.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 1-17-36

    v.

MARVELL L. SANDERS,

    O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Allen County Common Pleas Court
Trial Court No. CR2016 0300

Judgment Affirmed

Date of Decision:  September 3, 2024

---

APPEARANCES:

    *Eric J. Allen* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Marvell L. Sanders ("Sanders"), appeals the August 10, 2017 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from an attack by Sanders on his former girlfriend in the early morning hours of July 9, 2016. Sanders attacked the victim outside her home, pulled her into the home, and continued to assault her until their teenage son intervened.

{¶3} On August 11, 2016, the Allen County Grand Jury indicted Sanders on Count One of kidnapping in violation of R.C. 2905.01(A)(3), (C)(1), a first-degree felony; Count Two of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first-degree felony; Count Three of abduction in violation of R.C. 2905.02(A)(1), (C), a third-degree felony; Count Four of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; and Count Five of domestic violence in violation of R.C. 2919.25(A), (D)(2), a first-degree misdemeanor. The indictment contained a repeat-violent-offender specification as to Counts One and Two. On August 23, 2016, Sanders appeared for arraignment and entered pleas of not guilty.

{¶4} The case proceeded to jury trial on June 26-28, 2017. Prior to jury voir dire, the State requested that Counts Four and Five of the indictment be dismissed,

which the trial court granted. On June 28, 2017, the jury found Sanders guilty of Counts One, Two, and Three of the indictment.

{¶5} On August 9, 2017, the trial court sentenced Sanders to 11 years in prison as to Counts One and Two, respectively, and to nine years in prison as to the repeat-violent-offender specification set forth in each count.[1] For purposes of sentencing, the trial court merged Counts One and Three. The sentences were ordered to be served concurrently for an aggregate prison term of 20 years.

{¶6} Sanders filed his notice of appeal on August 31, 2017. Following several extensions, this court dismissed the appeal for failing to timely file a brief.

{¶7} However, on July 20, 2023, Sanders applied to reopen his appeal, which this court granted. Sanders raises four assignments of error for our review. For ease of discussion, we will begin our review by addressing Sanders's third and fourth assignments of error together, followed by his first assignment of error, and concluding with the second assignment of error.

**Third Assignment of Error**

**The State of Ohio Failed To Provide The Jury With Sufficient Evidence To Prove Beyond A Reasonable Doubt The Charges Of Kidnapping, Aggravated Burglary And Abduction In Violation Of Appellant's Due Process Rights.**

**Fourth Assignment of Error**

**The Convictions In This Matter Were Against The Manifest Weight Of The Evidence.**

---

[1] The trial court filed its judgment entry of sentencing on August 10, 2017.

{¶8} In his third and fourth assignments of error, Sanders argues that his convictions are based on insufficient evidence and are against the manifest weight of the evidence. In particular, he argues that the State presented insufficient evidence that he (1) removed the victim from her home, (2) terrorized the victim or caused her serious physical harm, and (3) trespassed by force, stealth, or deception when he entered the victim's home. Moreover, Sanders argues that his convictions are against the manifest weight of the evidence because, even though "[t]here was an incident" at the victim's home, there was "not the violence claimed by the alleged victim." (Appellant's Brief at 18).

*Standard of Review*

{¶9} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept separate.

{¶10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89 (1997), fn. 4. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in

a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

{¶11} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Sufficiency-of-the-Evidence Analysis*

**{¶12}** As an initial matter, Sanders challenges the sufficiency and the weight of the evidence supporting the jury's findings of guilt as to the abduction charge under Count Three of the indictment. Nevertheless, we need not address those arguments since the trial court merged Counts One and Three for sentencing purposes. *See State v. Sheldon*, 2019-Ohio-4123, ¶ 11-12 (3d Dist.). Therefore, we will limit our review to the sufficiency and weight of the evidence regarding Sanders's kidnapping and aggravated-burglary convictions.

*Kidnapping*

**{¶13}** Sanders was convicted of kidnapping under R.C. 2905.01(A)(3), which provides, in relevant part, that "[n]o person, by force, threat, or deception, . . . shall remove another from the place where the other person is found or restrain the liberty of the other person" for the purpose "[t]o terrorize, or to inflict serious physical harm on the victim or another." *See State v. Fahringer*, 2000 WL 567889, *5 (3d Dist. May 11, 2000) (stating that the crime of kidnapping requires a purposeful removal or restraint of the victim to terrorize or inflict serious physical harm). "Serious physical harm" includes any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶14}** On appeal, Sanders argues that his kidnapping conviction is based on insufficient evidence because the victim "was found at home" and "remained at home throughout the entire episode." (Appellant's Brief at 14). Sanders further argues that "[t]here is no evidence that [he] filled the victim with terror and anxiety" or that the victim suffered serious physical harm. (*Id.* at 11).

**{¶15}** Based on our review of the record, we conclude that the State presented sufficient evidence to show that Sanders used force, threat, and deception to remove the victim from the place where she was found and restrained her liberty for the purpose to terrorize and inflict serious physical harm. Specifically, the victim testified that, on the day of the attack, she awoke at 3:15 a.m. to get ready for work. When the victim exited her front door to leave for work, Sanders charged at the victim and assaulted her with his hands and a gun. The victim fell onto her back in the driveway and attempted to shield her face from the attack. Then, Sanders grabbed the victim by her hair and pulled her into her home.

{¶16} The victim further testified that she did not initially recognize Sanders because he was dressed in all black and it was dark outside. At one point during the attack, the victim asked, "What do you want from me?" (June 26-28, 2017 Tr. at 129). Sanders responded, "Bitch, this is what you get. Bitch shut up." (*Id.*). Upon hearing the assailant's voice, the victim knew it was Sanders. When the victim screamed for help, Sanders suffocated her and she could not breathe. Sanders then threatened, "Bitch, I'm going to kill you. Shut up. I'm going to kill you." (*Id.* at 130). *See State v. Meeks*, 2020-Ohio-5050, ¶ 24 (3d Dist.) (noting that the kidnapping statute only requires that a defendant restrain a victim with the purpose to terrorize or inflict serious physical harm; a defendant does not have to complete his acts).

{¶17} The victim's teenage son—who is also Sanders's son—testified at trial. The son testified that he was sleeping upstairs on the day of the attack and awoke when he heard his mother screaming. The son ran downstairs to find Sanders standing behind his mother with one hand over her mouth and the other holding a gun. The son tackled Sanders and the gun fell to the floor. While the son pinned Sanders to the ground, Sanders bemoaned, "They're going to give me years for this." (June 26-28, 2017 Tr. at 193). Sanders begged his son, "You got to let me go. You got to let me go." (*Id.* at 194). The son released Sanders and he assaulted the victim again. The son tackled Sanders a second time. Eventually, the son let Sanders go and he fled the scene.

**{¶18}** With respect to the injuries caused by Sanders's criminal conduct, the victim testified that she suffered a black eye, a busted lip, and abrasions on her face, neck, hands, and elbows as a result of Sanders's attack. Moreover, several photographs depicting the victim's injuries were admitted into evidence at trial. The victim also saw a chiropractor for six weeks to treat whiplash from the assault and took four weeks off from work due to her injuries.

**{¶19}** Accordingly, after viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Sanders used force, threat, and deception to remove the victim from the place where she was found and restrained her liberty for the purpose to terrorize and inflict serious physical harm. Therefore, Sanders's kidnapping conviction is based on sufficient evidence.

*Aggravated Burglary*

**{¶20}** Sanders was convicted of aggravated burglary in violation of R.C. 2911.11(A), which provides, in relevant part,

> No person, by force, stealth, or deception, shall trespass in an occupied structure . . . , when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

R.C. 2911.11(A)(1). "Trespass occurs when someone knowingly enters the premises of another without privilege to do so." *State v. Berry*, 2017-Ohio-1490, ¶

22 (3d Dist.); R.C. 2911.21(A)(1). "Privilege" is "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶21} On appeal, Sanders argues that his aggravated-robbery conviction is based on insufficient evidence because the State failed to present sufficient evidence to show that he entered the victim's home by force, stealth, or deception. However, based on our review of the record, we conclude that the State presented sufficient evidence to show that Sanders trespassed by force, stealth, or deception when he entered the victim's home. Critically, the victim testified that Sanders did not have her permission to enter her home on the day of the attack. The victim further testified that, prior to the attack, she and Sanders had lived together in the home for about ten years until they broke up in 2015—when Sanders moved out. The victim testified that Sanders no longer had a key to her home, nor was he allowed to enter her home without her permission. Lastly, the home was owned solely by the victim at all times relevant herein.

{¶22} Thus, after viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Sanders trespassed by force, stealth, or deception when he entered the victim's home on the day of the attack. Therefore, Sanders's aggravated-burglary conviction is based on sufficient evidence.

*Manifest-Weight-of-the-Evidence Analysis*

**{¶23}** Having concluded that Sanders's kidnapping and aggravated-burglary convictions are based on sufficient evidence, we next address his argument that these convictions are against the manifest weight of the evidence.

**{¶24}** Here, Sanders argues that his kidnapping and aggravated-burglary convictions are against the manifest weight of the evidence because his convictions are primarily based on testimony of the victim and son, who were not credible. Specifically, Sanders contends that their testimony was not credible because "[t]hey had reasons to enhance the story to make it worse" than it was. (Appellant's Brief at 16).

**{¶25}** When considering the credibility of witnesses in a manifest-weight challenge, we have acknowledged that "'the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections—observations that are critical to determining a witness's credibility.'" *Sheldon*, 2019-Ohio-4123, at ¶ 45 (3d Dist.), quoting *State v. Bentz*, 2017-Ohio-5483, ¶ 98 (3d Dist.), quoting *State v. Williams*, 2013-Ohio-573, ¶ 31 (8th Dist.). Moreover, "nonverbal information, incapable of being transcribed into the record by the court stenographer, significantly influences the fact finder's determinations." *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). "'Thus, the decision whether, and to what extent, to believe the testimony of each witness is within the province of the

factfinder.'" *Sheldon* at ¶ 45, quoting *In re D.L.*, 2012-Ohio-1796, ¶ 32 (3d Dist.). Therefore, we will not second guess "'the jury's witness-credibility determination unless it is clear that the jury lost its way and a miscarriage of justice occurred.'" *Id.*, quoting *State v. Thompson*, 2018-Ohio-637, ¶ 109 (3d Dist.).

**{¶26}** When weighing the evidence presented by both sides, we conclude that the evidence we summarized in our sufficiency-of-the-evidence analysis supporting Sanders's kidnapping and aggravated-burglary convictions is weightier than the evidence against those convictions. Notably, Sanders overlooks the photographs depicting the injuries suffered by the victim as a result of the attack. Moreover, the jury heard the testimony of Officer Matthew Woodworth ("Officer Woodworth") of the Lima Police Department. Specifically, Officer Woodworth testified that he responded to the victim's 911 call and photographed her injuries. Officer Woodworth further testified that the victim had multiple scratches and lacerations on her face and around her neck, abrasions on her elbows and shoulder, and bloodshot eyes. Officer Woodworth explained that the victim had burst blood vessels in her eyes which can happen when a person is not able to breathe due to strangulation. Officer Woodworth also took photographs of blood smears he observed in the victim's home on the day of the attack.

**{¶27}** Sanders did not testify in his defense. Instead, the jury heard an audio recording of a call Sanders made to the Lima Police Department on the day of the attack wherein he gave his version of events. Sanders stated that the victim had

invited him into her home and they got into a fight. Sanders further stated that his son came downstairs and saw Sanders and his mother fighting. Sanders and his son "wrestled around for a little bit." (State's Exhibit 33).

{¶28} Finally, Sanders offered the testimony of M.H. to support his version of events. In particular, M.H. testified that he drove Sanders to the victim's home around 3:00 a.m. on the day of the attack. M.H. saw the victim and Sanders "outside having a conversation." (June 26-28, 2017 Tr. at 285). M.H. waited in his vehicle to see if Sanders "needed a ride back" because the victim and Sanders were "casually talking." (*Id.* at 287). M.H. saw the victim and Sanders "walk in the house like he was going to stay in, but the door never shut." (*Id.* at 288). Shortly thereafter, Sanders came out of the house and got into M.H.'s vehicle. M.H. testified that Sanders looked disheveled and stated, "I'm not going to stay here. She's -- there was an altercation. I'm just not going to stay here." (*Id.*). On cross examination, M.H. admitted that he did not contact the police to report what he saw on the day of the attack.

{¶29} In considering the foregoing evidence, "the jury was free to believe or disbelieve all, part, or none of the testimony of the witnesses presented at trial." *State v. Erickson*, 2015-Ohio-2086, ¶ 42 (12th Dist.). Indeed, it was well within the province of the jury to determine M.H.'s credibility in recounting what he saw on the day of the attack, including the prerogative to find M.H. not to be truthful. Moreover, it was within the jury's prerogative to find Sanders's version of events—

as evidenced by the audio recording of his call to the police—not to be truthful. Accordingly, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that Sanders's kidnapping and aggravated-burglary convictions must be reversed and a new trial ordered. *See Sheldon*, 2019-Ohio-4123, at ¶ 45. Consequently, Sanders's kidnapping and aggravated-burglary convictions are not against the manifest weight of the evidence.

{¶30} Sanders's third and fourth assignments of error are overruled.

**First Assignment of Error**

**The Trial Court Erred In Not Granting Defendant's Motion To Remove Appointed Counsel In Violation Of Sixth Amendment To The Federal Constitution Made Applicable To The State Of Ohio By The Fourteenth Amendment.**

{¶31} In his first assignment of error, Sanders argues that he was denied his right to counsel because the trial court did not grant his motion to remove his appointed trial counsel. Specifically, Sanders contends that "there was not a meaningful attorney-client relationship" with his trial counsel such that the trial court's decision denying his motion was an abuse of discretion. (Appellant's Brief at 7).

*Standard of Review*

{¶32} "The decision whether to remove court-appointed counsel and allow substitution of new counsel is within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion." *State v. Stein*,

2018-Ohio-2345, ¶ 19 (3d Dist.). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶33} "An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant 'has the right to professionally competent, effective representation.'" *Stein* at ¶ 20, quoting *State v. Evans*, 2003-Ohio-3475, ¶ 30 (7th Dist.). "'Competent representation does not include the right to develop and share a "meaningful attorney-client relationship" with one's attorney.'" *Id.*, quoting *State v. Gordon*, 2002-Ohio-2761, ¶ 12 (1st Dist.).

{¶34} "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus. "'Defendant and trial counsel's failure to "see eye to eye" regarding trial strategy is an insufficient basis for removal of appointed counsel.'" *Stein* at ¶ 29, quoting *State v. Hill*, 2018-Ohio-279, ¶ 11 (8th Dist.).

{¶35} In this case, Sanders argues that the trial court abused its discretion by denying his motion to remove his appointed trial counsel because the attorney-client relationship had broken down. In particular, Sanders asserts that his trial counsel spent only four hours with him. Sanders further asserts that "[t]he attorney

overlooked [an] investigation that would have been useful in cross examination and argument before the court." (Appellant's Brief at 8). Thus, Sanders argues that the trial court's denial of his motion was unreasonable, arbitrary, and unconscionable.

{¶36} Prior to the commencement of trial, the trial court considered Sanders's motion to remove his appointed trial counsel filed five days earlier. The trial court asked Sanders to elaborate on his request for new counsel and Sanders responded that his trial counsel was too busy with his "very, very heavy caseload." (June 26-28, 2017 Tr. at 2). Sanders explained,

> I feel like I need a lawyer that's going to have enough time to sit down with me to go over stuff that I want to go over extensively as far as me facing the rest of my life in prison for something that I feel is took out of -- is took out of control from a vindictive woman trying to pay me back and I didn't do the stuff that the state or the victim allege[ ] that I did.

(*Id.* at 2-3).

{¶37} In response to inquiry from the trial court, Sanders's trial counsel informed the trial court that he met with Sanders the prior evening to prepare for trial. During their meeting, Sanders expressed his desire to not go forward because he did not believe that his trial counsel was prepared for trial. Sanders discussed issues that he believed required further investigation. Sanders's trial counsel, however, considered those issues to be tangentially related to the case and of little, if any, probative value to Sanders's defense. Sanders's trial counsel informed the trial court that he was prepared to go forward with trial. Specifically, Sanders's trial

counsel stated that he had reviewed the State's discovery and was prepared to cross examine the State's witnesses. Sanders's trial counsel further stated that he had reviewed the summaries of witness statements prepared by the investigator and issued subpoenas for defenses witnesses to appear at trial.

{¶38} In reaching its decision denying Sanders's request for new counsel, the trial court noted that the motion was filed "on the eleventh hour" and that Sanders has had two prior attorneys in this case. (*Id.* at 14). The trial court further noted that Sanders's trial counsel is an experienced trial attorney and "the court has the utmost confidence in his skill and the position that he is currently holding in this case." (*Id.* at 15). Thus, the trial court determined that there was not a breakdown in the attorney-client relationship necessitating the appointment of new counsel.

{¶39} Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Sanders's motion to remove his appointed trial counsel. Even though there was a disagreement between Sanders and his trial counsel regarding preparedness and trial strategy, Sanders failed to establish that a breakdown of the attorney-client relationship had occurred. *See State v. Shurelds*, 2021-Ohio-1560, ¶ 70 (3d Dist.) (concluding that a disagreement over how the case should be tried is insufficient to establish a breakdown in communication). Furthermore, our review of the record indicates that Sanders's trial counsel was thoroughly prepared for trial. Therefore, the trial court's decision denying Sanders's request for new counsel was not unreasonable, arbitrary, or unconscionable.

{¶40} Sanders's first assignment of error is overruled.

**Second Assignment of Error**

**Appellant Was Denied Effective Assistance Of Counsel As Guaranteed By The Fifth and Sixth Amendments Made Applicable To The State of Ohio By The Fourteenth Amendment And Under The Precedent Of *Strickland v. Washington*.**

{¶41} In his second assignment of error, Sanders argues that he was denied his constitutional right to effective assistance of counsel because his trial counsel failed to meet with an investigator who had "vital information that was crucial to the case." (Appellant's Brief at 9-10). Sanders further argues that he was prejudiced by his trial counsel's failure to meet with the investigator because "exculpatory" and "relevant evidence" was not provided to the jury. (*Id.* at 10).

*Standard of Review*

{¶42} A defendant asserting a claim of ineffective assistance of counsel must establish that (1) his counsel's performance was deficient or unreasonable under the circumstances, and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's performance was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of

reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶43} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Liles* at ¶ 48, quoting *Bradley* at 142.

*Analysis*

{¶44} Here, Sanders claims that he received ineffective assistance of counsel because his trial counsel failed to meet with an investigator who purportedly had "exculpatory" and "relevant evidence" that would exonerate Sanders. (Appellant's Brief at 10).

{¶45} "A claim of ineffective assistance of trial counsel may exist where the record shows that the defendant's attorney failed to conduct a reasonable investigation into a defendant's case." *State v. Anders*, 2017-Ohio-2589, ¶ 66 (3d Dist.). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

**{¶46}** Even assuming (without deciding) that Sanders's trial counsel did not meet with the investigator, Sanders cannot demonstrate that his trial counsel's performance was deficient or unreasonable under the circumstances, or that he was prejudiced by the alleged deficiency. Specifically, Sanders cannot demonstrate that the outcome of his trial would have been different had his trial counsel met with the investigator and discovered any additional evidence.

**{¶47}** As we addressed in Sanders's first assignment of error, Sanders and his trial counsel disagreed over trial strategy. Sanders sought the appointment of new counsel, in part, because he believed that further investigation was needed to properly prepare his defense. Sanders's trial counsel, however, did not see the need for further investigation and was prepared to go forward with trial. Importantly, the record in this case does not contain any indication that exculpatory evidence exists. Consequently, it is pure speculation to conclude that the result of Sanders's trial would have been different had any additional evidence been discovered. *See State v. Sorrell*, 2023-Ohio-2101, ¶ 51 (3d Dist.) (noting that an ineffective-assistance-of-counsel argument premised on the failure to introduce evidence not contained in the record is speculative). Based on the foregoing, Sanders failed to demonstrate that the actions of his trial counsel were not part of a trial strategy and that the outcome

of the trial would have been different. Therefore, Sanders's trial counsel was not ineffective.

**{¶48}** Sanders's second assignment of error is overruled.

**{¶49}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued in assignments, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and BALDWIN, J.J., concur.**

**\*\*Judge Craig R. Baldwin of the Fifth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**