[Cite as *State v. Evans*, 2023-Ohio-237.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

    Plaintiff-Appellee

-vs-

RONALD E. EVANS

    Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 2022 CA 0034

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Richland County Court of Common Pleas, Case No. 2021 CR 863 N |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 27, 2023 |

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
Richland County, Ohio
38 South Park Street, Second Floor
Mansfield, Ohio 44902

For Defendant-Appellant

DARIN AVERY
105 Sturges Avenue
Mansfield, Ohio 44903

*Hoffman, J.*

**{¶1}** Defendant-appellant Ronald E. Evans appeals the judgment entered by the Richland County Common Pleas Court convicting him of possession of cocaine (R.C. 2925.11(A),(C)(4)(a)), possession of a fentanyl related compound (R.C. 2925.11(A),(C)(11)(a)), and possession of drugs (R.C. 2925.11(A)(C)(2)(a)), and sentencing him to an aggregate prison term of twenty-four months.  Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On September 24, 2021, Appellant approached the front door of the residence of Renier Cameron.  The door was equipped with a Ring Cam, which monitors and captures a video of anyone who approaches the door, whether or not they ring the doorbell.  Cameron was alerted to Appellant's presence by the Ring Cam.  Because Cameron did not know Appellant, he went to the door to investigate.

**{¶3}** Appellant gave Cameron a name and asked if the person lived at the residence.  Cameron responded negatively.  Appellant then asked Cameron to give him a ride.   Although a car parked in front of the residence belonged to Cameron, Cameron told Appellant the car did not belong to him because Cameron did not want to give Appellant a ride.

**{¶4}** Cameron closed the front door and went upstairs.  His doorbell started "going crazy like soundwise." Tr. 263.  Cameron ran downstairs and saw Appellant inside his car.  When Cameron asked Appellant what he was doing, Appellant responded, "[W]ell, you said it wasn't your car." Tr. 263.  Cameron called the police.

**{¶5}** When police arrived, Appellant was still inside the car.  Officer Raymond Reedy of the Mansfield Police Department pulled Appellant out of the car and attempted

to handcuff Appellant.  Appellant began screaming for help.   Appellant was placed in the back of the patrol car.   When officers searched Appellant, they found Cameron's Ring Cam.  Police also found a black case containing cocaine, fentanyl, and Clonazepam (Klonopin) pills.

{¶6}    Appellant was indicted by the Richland County Grand Jury on three counts of possession of drugs.  Attorney Jack VanBibber was appointed as counsel for Appellant. On February 9, 2022, Appellant filed a pro se motion for new appointed counsel, also stating he was considering hiring private counsel.  The motion was denied.

{¶7}    On February 17, 2022, Attorney VanBibber filed a motion to withdraw, citing irreconcilable differences and a breakdown of communication with Appellant.  After a hearing, the trial court overruled the motion, finding counsel diligently and zealously represented Appellant, and Appellant invited the problem by refusing to cooperate with VanBibber in an attempt to try to force the trial court to appoint new counsel.

{¶8}    The case proceeded to jury trial in the Richland County Common Pleas Court.  Prior to the start of trial, the court met with Appellant, his trial counsel, and the prosecutor after it came to the trial court's attention Appellant did not want to participate in the trial.  Appellant asked for an extension, which the trial court denied.  Appellant was agitated and belligerent with the court, and continued yelling and swearing at the judge despite twice being found in contempt and given 30 days in jail.  Appellant indicated he did not want to participate in the trial, and did not want to watch the trial from the basement of the courthouse by video.  Appellant was removed from the courtroom and returned to the jail, and the trial proceeded in his absence.

**{¶9}** Following trial, Appellant was convicted of all three counts. The trial court merged the charges of possession of cocaine and possession of a fentanyl related compound, sentencing Appellant to twelve months incarceration for possession of cocaine. The trial court sentenced Appellant to twelve months incarceration for possession of Clonazepam, to be served consecutively, for an aggregate prison term of twenty-four months.

**{¶10}** It is from the April 29, 2022 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW COUNSEL AND APPELLANT'S COUNSEL'S MOTION TO WITHDRAW.

II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO CONTINUE HIS JURY TRIAL.

III. THE TRIAL COURT ERRED IN DENYING APPELLANT HIS RIGHT TO CONFRONT WITNESSES AGAINST HIM BY PROHIBITING HIM FROM ATTENDING HIS JURY TRIAL.

IV. THE COURT ERRED IN DENYING DEFENDANT'S RULE 29 MOTION TO DISMISS COUNT 3.

I.

{¶11} In his first assignment of error, Appellant argues the trial court erred in overruling his motion for new appointed counsel and his trial counsel's motion to withdraw as counsel.

{¶12} The decision whether to remove court-appointed counsel and allow substitution of new counsel is within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Murphy,* 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). An abuse of discretion implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams,* 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶13} An indigent defendant does not have a right to choose a particular attorney; rather, such a defendant "has the right to professionally competent, effective representation." *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, 792 N.E.2d 757, ¶ 30 (7th Dist. Jefferson), *citing State v. Murphy*, 91 Ohio St.3d 516, 523, 747 N.E.2d 765 (2001). "Competent representation does not include the right to develop and share a 'meaningful attorney-client relationship' with one's attorney." *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, 776 N.E.2d 1135, ¶ 12 (1st Dist. Hamilton).

{¶14} In order for the court to discharge a court-appointed attorney, "the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997), *quoting State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. However, the right to counsel must be balanced against the court's authority to control its docket, as well as its

awareness a "demand for counsel may be utilized as a way to delay the proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (C.A.6 1988); *see, also, Murphy, supra.*

**{¶15}** In the instant case, it appears prior to the motions filed by Appellant and Attorney VanBibber in February, Appellant's desire for a new attorney had come to the trial court's attention via a jail "kite," and was discussed off the record at a pretrial hearing on January 4, 2022. At the March hearing on the motion to withdraw as counsel, the trial court noted it had earlier informed Appellant his decision not to talk to Mr. VanBibber was a detriment to himself, but counsel was nevertheless doing his job in representing Appellant. Tr. 3/7/22, p. 5. The trial court also indicated Appellant was told at the January pretrial he could retain counsel to represent him; however, several months later at the March 7, 2022 hearing on the motion to withdraw, retained counsel had not entered an appearance.

**{¶16}** The trial court overruled counsel's motion to withdraw, stating on the record:

THE COURT: Okay, Mr. Evans, we are done as of today.

Mr. VanBibber, I am finding that your motion is not well taken. Your client has chosen not to cooperate with you. That is on your client. Mr. Evans could do this with every counsel we provide to him, and this Court is not going to drag this on forever. Mr. Evans has every opportunity to cooperate with you, to talk with you, to allow you to do your job. You have been doing it. He has decided not to go forward. That's his decision. He has indicated that he has been working on getting counsel, and that is back

clear as of at least January the 4th, so we are now two months, and nobody has come forward on Mr. Evans' behalf to enter an appearance.

Mr. VanBibber has been working this case. He has attempted to talk with you, Mr. Evans. You have chosen not to. That is your decision.

MR. EVANS: After I filed my motion.

THE COURT: At this point –

MR. EVANS: After I filed my motion –

THE COURT: -- the Court is not going to grant withdrawal. This matter will continue on for trial, which is set for March 22nd. So I would suggest, Mr. Evans, you start cooperating with Mr. VanBibber so he can give you a valid and thorough defense in this matter.

MR. EVANS: No, I'm not.

**{¶17}** Tr. 3/7/22, p. 8-9.

**{¶18}** From the record of the hearing on Attorney VanBibber's motion to withdraw, we find the trial court did not abuse its discretion in overruling counsel's motion to withdraw, nor did it abuse its discretion in overruling Appellant's motion for new counsel. It is apparent from Appellant's conduct throughout the proceedings he intended to refuse to cooperate with counsel in order to delay the proceedings and to interfere with the trial court's ability to try the case, and not due to a true breakdown of the relationship with counsel. The trial court noted throughout the case counsel was effectively representing Appellant despite Appellant's refusal to cooperate, and Appellant points to nothing in the record demonstrating counsel was unable to effectively represent him at trial.

{¶19} The first assignment of error is overruled.

## II.

{¶20} In his second assignment of error, Appellant argues the trial court erred in overruling his motion for a continuance of the jury trial, made orally on the morning of trial.

{¶21} We note at the outset the motion was not made by counsel for Appellant, but rather was a pro se verbal request made while Appellant was represented by counsel. Although Appellant has the right either to appear pro se or to have counsel, he has no corresponding right to act as co-counsel on his own behalf. *State v. Thompson*, 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407 (1987). Therefore, we find the trial court could have overruled his motion solely on the basis the request was not made by counsel.

{¶22} Further, the grant or denial of a continuance is a matter entrusted to the discretion of the trial court. *State v. Unger,* 67 Ohio St. 2d 65, 423 N.E.2d 1078 (1981). While Appellant claimed they were not prepared for trial, it is also apparent from the record throughout the case he refused to speak with his attorney. Therefore, it is unclear on what basis he formed an opinion counsel was unprepared for trial. Counsel did not claim to be unprepared for trial, and did not ask for a continuance. We find the trial court did not abuse its discretion in overruling Appellant's request for a continuance.

## III.

{¶23} In his third assignment of error, Appellant argues he was denied his constitutional right to confront the witnesses against him when the trial court removed him from the courtroom during his trial. While he concedes his behavior was disruptive, he argues the trial court did not specifically ask him if he would conduct himself with decorum and respect were he to remain in the courtroom, and did not offer him an opportunity to

return, save for offering a right to testify. He argues his only alternative was to watch the proceedings on video.

**{¶24}** A defendant has a fundamental right to be present at all critical stages of his criminal trial. Article I, Section 10, Ohio Constitution; Crim.R. 43(A). A defendant's absence, however, does not necessarily result in prejudicial or constitutional error. *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶83. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.*, *quoting Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, at ¶ 139.

**{¶25}** Crim. R. 43(B) provides for the exclusion of a defendant from the courtroom for disruptive behavior:

> **(B) Defendant Excluded Because of Disruptive Conduct**. Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with the defendant's continued physical presence, the hearing or trial may proceed in the defendant's absence or by remote contemporaneous video, and judgment and sentence may be pronounced as if the defendant were present. Where the court determines that it may be essential to the preservation of the constitutional rights of the defendant, it may take such steps as are required for the communication of the courtroom proceedings to the defendant.

**{¶26}** Nothing in Crim.R. 43(B) requires a trial court to offer the defendant's return. *State v. Powell*, 12th Dist. Warren No. CA2018-11-130, 2019-Ohio-4398, ¶ 23. Instead, and as stated by the United States Supreme Court, once lost, the right to be present for trial "can" be reclaimed if the defendant is willing to conduct himself or herself "consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id., citing Illinois v. Alle*n, 397 U.S. 337, 343, 90 S. Ct. 1057 (1970). However, the language used in *Allen* is permissive, not mandatory, and the ability of the defendant to return is within the trial court's discretion. *State v. Dumas*, 7th Dist. Mahoning No. 12 MA 31, 2015-Ohio-2683, ¶ 26.

**{¶27}** The matter of Appellant's attendance at trial came to the court's attention based on Appellant's desire to not be physically present. The following proceedings took place outside the presence of the jury on the morning of trial:

THE COURT: Well, I want to know if you are going to participate today. Are you going to be in this courtroom or not?

MR. EVANS: For?

THE COURT: The trial.

MR. EVANS: I am trying to get an extension, like I said.

THE COURT: Mr. Evans, you –

MR. EVANS: You still haven't given me time. I am still looking for an attorney.

THE COURT: Mr. Evans –

MR. EVANS:  I haven't – I'm two, three, four counties away from my parents, man.  I can't contact them.  Nobody gives a shit.  I am here and I need some fucking help

THE COURT:  Mr. Evans –

MR. EVANS:  You are sitting here trying to shit on me.

THE COURT:  Mr. Evans, stop.

MR. EVANS:  Fuck you right now.

THE COURT:  Mr. Evans, stop.  I'm going to hold you –

MR. EVANS:  Fuck you.

{¶28}  Tr. 8.

{¶29}  The trial court at this point held Appellant in direct contempt of court. Discussion about Appellant's participation at trial continued:

THE COURT:  Well, Mr. Evans, the court has asked you, are you going to participate today or not?

MR. EVANS:  No.

{¶30}  Tr. 9.

{¶31}  Appellant continued to maintain he needed another attorney, and the trial court was forcing him to proceed with trial while unprepared.  After continued discussion wherein Appellant repeatedly interrupted the judge by stating, "Black lives matter," the trial judge returned to the question of whether Appellant would participate in trial:

THE COURT: Mr. Evans, I am going to ask you again, one more time, for your benefit, are you going to participate or are you not?

MR. EVANS: I'm not prepared to go forward with this trial. I am asking for a continuance.

THE COURT: All right. The court is going to inquire then, Mr. Evans, are you at this time wishing or desirous of watching the trial by video?

MR. EVANS: I'm not going to watch the trial. I am not ready to go forward with the trial.

**{¶32}** Tr. 15-16.

**{¶33}** The trial proceeded in Appellant's absence. Later the same day at the conclusion of the presentation of the State's case in chief, discussion ensued outside the presence of the jury regarding how to handle Appellant's desire to testify without a allowing him to disrupt the proceedings. The trial court took sworn testimony from Officer Charles Pennywhitt, who testified when he went to get Appellant for trial that morning, Appellant initially refused to come, stating if he didn't come, they couldn't have a trial. The officer testified he convinced Appellant to come and talk to the judge outside the jury's presence. After Appellant was removed from the courtroom, Appellant told Ofcr. Pennywhitt, "[T]hey're not having a trial. If he takes me back in there, I'm just going to yell and scream and cuss everybody out, and basically you and his defense attorney, until I get a mistrial." Tr. 322. Appellant indicated unless he could get a deal of probation, he was going to make the trial "impossible to get through." Tr. 322. Upon advice from counsel, Appellant chose not to testify the next day. Tr. 339.

**{¶34}** While the trial court did not advise Appellant he could return if he could conduct himself appropriately, we find the record demonstrates Appellant intended to disrupt the proceedings in order to cause a mistrial, and also appeared to falsely believe they could not conduct the trial if he refused to participate. Further, pursuant to Crim. R. 43(B), Appellant did not have an absolute right to watch the proceedings by video, and had affirmatively indicated to the trial court he did not wish to watch the trial by video. We find the trial court did not err in excluding Appellant from the courtroom based on his disruptive behavior and his repeated refusal to participate. The trial court was not required to inform him he could return to the courtroom if he conducted himself properly, and it is apparent from the record Appellant was intent on stopping the trial, whether by his deliberate absence or his disruptive behavior.

**{¶35}** The third assignment of error is overruled.

IV.

**{¶36}** In his fourth assignment of error, Appellant argues the trial court erred in overruling his Crim. R. 29 motion to dismiss the charge of possession of Clonazepam because the State failed to provide sufficient evidence by way of scientific testing demonstrating the tablets found in Appellant's possession were in fact Clonazepam.

**{¶37}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶38} In Count 3, Appellant was charged with possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a), which provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

> (C) Whoever violates division (A) of this section is guilty of one of the following:

> (2) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of possession of drugs. The penalty for the offense shall be determined as follows:

> (a) Except as otherwise provided in division (C)(2)(b), (c), or (d) of this section, possession of drugs is a misdemeanor of the first degree or, if the offender previously has been convicted of a drug abuse offense, a felony of the fifth degree.

{¶39} Anthony Tambasco, an employee with the Mansfield Police Department Crime Lab, was found without objection to be an expert by the trial court in this case. Tr. 303. Regarding his identification of the drug Clonazepam, he testified he did not test the drugs, but rather looked up the tablets in a reference book and confirmed the color, scores, and markings were all in place to positively identify the pills as Clonazepam. He testified this is standard practice within the field. He testified they had started to encounter counterfeit Alprazolam tablets in the field, and so he now could not take for granted that

particular drug was not fake and had to test Alprazolam rather than identifying it by the markings.  Because of this, he "got really curious" about Clonazepam a while ago, and had conducted testing on some tablets to determine if they were counterfeit, but he discovered no indication in the industry of an issue with counterfeit Clonazepam.  Until he sees a fake tablet come through the lab, he continues to identify Clonazepam using the reference book, as the lab does for most pharmaceutical drugs not known to be actively counterfeited.  Tr. 310-11.

{¶40}  The Ohio Supreme Court has held scientific analysis is not required for the identification of a controlled substance, and a drug may be identified by circumstantial evidence. *State v. McKee,* 91 Ohio St.3d 292, 294, 744 N.E.2d 737, 739 (2001), *citing State v. Maupin*, 42 Ohio St.2d 473, 479, 330 N.E.2d 708 (1975).  Therefore, testimony identifying a prescription drug by its distinct markings is sufficient, without chemical testing, to prove the identity of the drug as a controlled substance.  *See., e.g., State v. Bailey*, 9th Dist. Summit No. 22773, 2006-Ohio-2042, ¶ 11*; State v. Vaughn,* 2nd Dist. Clark No. 2018-CA-31, 2019-Ohio-1026, 133 N.E.3d 997, ¶ 30; *State v. Volpe,* 10th Dist. Franklin No. 06AP-1153, 2008-Ohio-1678, ¶ 36.

**{¶41}** Based on the case law from the Ohio Supreme Court holding scientific analysis is not required, we find the testimony of the expert witness in this case identifying the tablets found in Appellant's possession to be a controlled substance known as Clonazepam to be sufficient evidence Appellant was in possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a).  The fourth assignment of error is overruled.

**{¶42}** The judgment of the Richland County Common Pleas Court is affirmed.

By: Hoffman, J.
Gwin, P.J.  and
Wise, John, J. concur