[Cite as *State v. Anderson*, 2024-Ohio-2505.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

TERRY A. ANDERSON,

        Defendant-Appellant.

CASE NO. 2023-L-099

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 001083

## O P I N I O N

Decided: June 28, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mary Catherine Corrigan*, 6555A Wilson Mills Boulevard, Suite 102, Mayfield Village, OH 44143 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Terry A. Anderson ("Mr. Anderson"), appeals the judgment of the Lake County Court of Common Pleas that sentenced him to an indefinite prison term of six to nine years after a jury found him guilty of complicity to aggravated burglary, complicity to trespass in a habitation, complicity to petty theft, and two counts of complicity to burglary. Mr. Anderson's convictions stem from a burglary that occurred while he was visiting the victim at her apartment.

{¶2} Mr. Anderson raises three assignments of error on appeal, contending (1) the trial court violated his Sixth Amendment right to the effective assistance of counsel by

failing to substitute assigned counsel; (2) his trial counsel was ineffective for failing to object to three witnesses testifying via Zoom, a live video teleconferencing platform, and to a hearsay statement made by the investigating officer; and (3) the manifest weight of the evidence does not support the jury's verdict.

{¶3} After a careful review of the record and pertinent law, we find Mr. Anderson's assignments of error are without merit.

{¶4} Firstly, our review of the record reveals Mr. Anderson failed to demonstrate a conflict of interest, a complete breakdown of communication, and/or an irreconcilable conflict in his relationship with his appointed counsel. Thus, he was not entitled to a substitution of his appointed counsel, and the trial court did not abuse its discretion by denying his request.

{¶5} Secondly, Mr. Anderson fails to articulate any issue with the *authenticity* of the cell phone and cable records, as opposed to a Confrontation Clause challenge to the documents sought to be introduced, which would have been the only grounds upon which his defense counsel could have challenged this evidence. Similarly, Mr. Anderson fails to demonstrate that his counsel was ineffective for failing to object to a hearsay statement because there was no hearsay statement that would trigger an objection.

{¶6} Thirdly, simply because much of the state's evidence was circumstantial does not mean the jury's verdicts are against the manifest weight of the evidence. Circumstantial evidence and direct evidence inherently possess the same probative value and are subject to the same standard of proof. Further, there is no requirement for the state to prove the identity of the principal offender to be found guilty of complicity. Quite simply, this is not the exceptional case in which the evidence weighs heavily against Mr. Anderson's convictions.

2

{¶7} The judgment of the Lake County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶8} In March 2023, the Lake County Grand Jury indicted Mr. Anderson on five counts: (1) complicity to aggravated burglary, a first-degree felony, in violation of R.C. 2911.11(A)(1) and 2923.03(A)(2); (2) complicity to burglary, a second-degree felony, in violation of R.C. 2911.12(A)(1) and 2923.03(A)(2); (3) complicity to burglary, a second-degree felony, in violation of R.C. 2911.12(A)(2) and 2923.03(A)(2); (4) complicity to trespass in a habitation, a fourth-degree felony, in violation of R.C. 2911.12(B) and 2923.03(A)(2); and (5) complicity to petty theft, a first-degree misdemeanor, in violation of R.C. 2913.02(A)(1) and 2923.03(A)(2).

## Pretrial Hearings - Substitution of Counsel

{¶9} On June 1, 2023, the trial court held a tentative change of plea hearing. The state reviewed that it extended an offer to Mr. Anderson to plead guilty to one count of complicity to burglary, a third-degree felony, with a joint recommendation for an 18-month prison sentence. Mr. Anderson had rejected the state's former offer to plead guilty to one count of complicity to burglary, a second-degree felony, with a joint recommendation for an 18-month prison sentence.

{¶10} Mr. Anderson informed the court that his court-appointed counsel, the Lake County Public Defender's Office, was not adequately representing him and that he would like to hire his own attorney. The court assured him he could hire his own counsel, reminded him that trial was set for June 20, 2023, and warned him that the court would not accept a better plea deal than the state's current offer. After the court reviewed his options, Mr. Anderson informed the court he would "be seeking a new attorney."

{¶11} On August 9, 2023, the court held a second tentative change of plea hearing. The court reviewed that plea deal negotiations had continued until the day before when Mr. Anderson made a counterproposal of pleading guilty to a fourth-degree felony, with a joint recommendation that he serve an 18-month prison sentence. Despite the state's agreement to Mr. Anderson's counterproposal, he rejected the offer and expressed his wish to proceed with trial.

{¶12} On the same day, Mr. Anderson filed a pro se "Motion to Substitute Counsel," styled as a letter asking the court "to discharge [his] current attorney" and "to be allowed to retain new legal representation." The court informed Mr. Anderson that nothing precluded him from hiring private counsel, that he has discussed hiring his own counsel since June 1, 2023, and that the court was not going to remove his appointed counsel until he hired his own counsel because the trial was set for the following Monday.

{¶13} Mr. Anderson then requested "another appointed attorney." Mr. Anderson's counsel reviewed the amount of time spent on Mr. Anderson's case and confirmed the public defender's office was prepared to go to trial the following Monday. Mr. Anderson agreed his counsel had obtained the plea deal he requested; however, he did not want to serve any jail time. The court explained that the public defender's office was prepared to go to trial, that Mr. Anderson failed to demonstrate a breakdown in communication, and that he was free to hire his own counsel. Mr. Anderson inquired whether he could proceed pro se but, upon further inquiry by the court, declined to do so for "the moment."

{¶14} In a judgment entry filed the same day, the trial court denied Mr. Anderson's motion.

## Witnesses Appearing by Video

{¶15} Shortly before trial, the state filed a motion in limine, requesting a preliminary order from the court finding that the subpoenaed records from T-Mobile, Charter Communications Corp., Microsoft, and OfferUp were self-authenticating as business records pursuant to Evid.R. 902(11), Evid.R. 902(13), and/or Evid.R. 803(6) and that witness testimony establishing their authenticity was not needed. Attached to the motion were affidavits by each corporation's records custodian attesting to the business records.

{¶16} The state also filed a second motion for video testimony, requesting that the records custodians for those corporations testify via Zoom because the witnesses resided out of state and were unavailable to testify in person.

{¶17} The trial court issued a judgment entry indicating it would rule on the state's motion in limine when the state offered the evidence to be admitted. The court further found that if the state determined witness testimony was necessary, it would allow the witnesses to testify remotely.

## Jury Trial

{¶18} The case proceeded to a five-day jury trial. The state presented 15 witnesses, including the victims, Willissa Provittt ("Ms. Provitt") and her daughter, P.M., and various officers from the Willoughby Police Department, who responded to and/or investigated the incident. Four witnesses testified via Zoom: a custodian of records for T-Mobile Corp.; a privacy specialist for Charter Communications, a telecommunications company and parent company of Spectrum; a law enforcement response specialist for Microsoft; and a senior investigator for OfferUp, an online buy/sell marketplace.

{¶19}   The state's case revealed that on the night of March 21, 2022, Mr. Anderson went to Ms. Provitt's two-bedroom apartment in Willoughby, Ohio.  They met on a dating app and they "had hung out" approximately four or five times.  Ms. Provitt's daughter, P.M., was staying with her stepmother and a friend who lived in her stepmother's apartment complex for the weekend.  After a while, they went into Ms. Provitt's bedroom.  At some point, Mr. Anderson left to go to the bathroom.  Ms. Provitt left twice, to use the bathroom and to get a drink from the kitchen.  On her second trip, she noticed the door to her daughter's room was ajar and the light was on.  It had been closed with the lights off.

{¶20}   Ms. Provitt pushed open the door and saw a man standing in her daughter's room.  He was African American, tall, and wearing a gray sweatshirt.  He was carrying a black bag.  Ms. Provitt loudly yelled, "there's a man in my house," several times and told Mr. Anderson to call the police.  The man pointed his fingers in the shape of a gun at her and told her to stay back.  The apartment had two entrances, one in the living room and one in the kitchen.  The man, who had taken off his shoes and left them in the kitchen, picked up his shoes and ran out the kitchen door.  Ms. Provitt testified that both doors had been locked.  She found Mr. Anderson standing behind her bed in her bedroom.

{¶21}   Ms. Provitt called 911, reporting that a man had broke into her home and stole her Nintendo Switch (a handheld gaming system) and her keys, and her daughter's Microsoft Xbox gaming console and Apple MacBook Pro laptop computer.  Her keys were later found in the parking lot of the apartment complex.

{¶22}   The first patrolman to arrive at the scene noticed a white charging cord laying on the ground inside the entrance way of the apartment, which Ms. Provitt later identified as her daughter's power cord to her MacBook Pro.  The police were able to

6

obtain the serial numbers for the Xbox and the Nintendo Switch because Ms. Provitt had the original boxes. The only information she had on the MacBook Pro was the bill of sale from Walmart that showed she purchased the laptop for $322.40.

{¶23} Using cell phone data gathered from a subpoena to T-Mobile, the Willoughby police were able to discern that Mr. Anderson and his neighbor, Lavelle Smith ("Mr. Smith"), were in the Willoughby area during the incident. They were both in the area of their homes in Cleveland approximately two hours later.

{¶24} From the records obtained from Microsoft and Charter Communications, the police discovered someone logged onto the internet with Ms. Provitt's Xbox from Mr. Anderson's apartment the night it was stolen. Shortly after, someone began logging onto the internet with Ms. Provitt's Xbox from Mr. Smith's apartment. The Willoughby police called Mr. Smith's federal probation officer and, during one of Mr. Smith's routine probation office visits, interviewed Mr. Smith. Several hours after the interview, Mr. Smith brought the Xbox to his probation officer's office, and the probation officer gave it to the Willoughby police.

{¶25} Mr. Anderson was apprehended, and his interview with the police was played for the jury. In the interview, he admitted Ms. Provitt's Xbox had been in his apartment, informing the police it was a coincidence that his neighbor, Mr. Smith, had brought it over. He explained that he bought and sold electronics on the online marketplace OfferUp. From records provided by OfferUp, the officers were able to identify a Nintendo Switch that looked like Ms. Provitt's on Mr. Anderson's OfferUp webpage; however, no serial number could be obtained. Mr. Anderson had posted it for sale and sold it on March 23, 2022, two days after the incident.

7

Case No. 2023-L-099

## Jury Verdicts and Sentencing

{¶26} The jury returned verdicts of guilty on all five counts, and the court deferred the matter for a presentence investigation and a sentencing hearing.

{¶27} At the sentencing hearing, the trial court found that the five counts merged for purposes of sentencing, and the state elected to proceed on count one, complicity to aggravated burglary, in violation of R.C. 2911.11(A)(1) and 2923.03(A)(2). The court noted Mr. Anderson's extensive criminal history, which included ten felony convictions, and the economic harm suffered by the victim. The court sentenced Mr. Anderson to serve an indefinite prison term of six to nine years and ordered him to pay $841.01 in restitution to the victims.

{¶28} Mr. Anderson raises three assignments of error for our review:

{¶29} "[1.] The Trial Court violated the Appellant's Sixth Amendment Rights to the effective assistance of counsel when it failed to grant a substitution of assigned counsel.

{¶30} "[2.] Trial Counsel provided ineffective assistance of counsel thereby violating Appellant's right to counsel.

{¶31} "[3.] The guilty verdict cannot be upheld because the evidence and testimony presented at trial did not establish his guilt beyond a reasonable doubt."

## Substitution of Assigned Counsel

{¶32} In his first assignment of error, Mr. Anderson contends the trial court violated his Sixth Amendment right to the effective assistance of counsel by failing to substitute his appointed counsel.

{¶33} As a general proposition, an indigent criminal defendant does not have a constitutional right to choose the attorney who will represent him at the expense of the

8

state; rather, he is only entitled to competent legal representation. *State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, ¶ 43.

**{¶34}** As a result, the request of a defendant to discharge his court-appointed counsel will be granted only if he can "'show a breakdown in the attorney-client relationship of such a magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" *Id.*, quoting *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus. *See also State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997).

**{¶35}** In applying this basic standard, Ohio courts have recognized three examples of good cause that would warrant the discharge of court-appointed counsel: (1) a conflict of interest, (2) a complete breakdown of communication, and (3) an irreconcilable conflict which could cause an apparent unjust result. *Jackson* at ¶ 44. In light of the nature of the three examples, it has been further held that the substitution of counsel should be allowed only if extreme circumstances exist. *Id.*

**{¶36}** Further, the Supreme Court of Ohio has expressly stated that the Sixth Amendment right to counsel was not intended to guarantee that a criminal defendant will have a "'rapport'" with his attorney. *Id.* at ¶ 45, quoting *Henness* at 65. "Accordingly, the existence of hostility or a personal conflict between the attorney and the defendant does not constitute a total breakdown so long as it does not inhibit the attorney from both preparing and presenting a competent defense." *Id.* Nor is a dispute over the attorney's trial tactics or strategy sufficient to establish a breakdown. *Id.* Fundamentally, "the lack of communication must be permanent in nature before a finding of a complete breakdown can be made." *Id.*

Case No. 2023-L-099

{¶37} A trial court's decision denying a request for new counsel is reviewed under an abuse of discretion standard. *State v. Stevens*, 11th Dist. Portage No. 2020-P-0043, 2021-Ohio-2643, ¶ 63. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶38} Our review of the record reveals Mr. Anderson failed to demonstrate a conflict of interest, a complete breakdown of communication, and/or an irreconcilable conflict in his relationship with his appointed counsel. Thus, he was not entitled to substitution of his appointed counsel, and the trial court did not abuse its discretion by denying his request.

{¶39} Mr. Anderson's appointed attorney stated for the record the efforts she made on his behalf, which included over two months of plea deal negotiations, culminating in the plea deal he requested, holding multiple conference calls with Mr. Anderson and his mother, and assuring the court she was prepared for trial. Mr. Anderson's counsel even went so far as to arrange transportation for an office visit, which Mr. Anderson chose not to utilize. Thus, it appears Mr. Anderson was communicating with his counsel and regarded his appointed counsel as his counsel. *See State v. Cowans*, 87 Ohio St.3d 68, 73, 717 N.E.2d 298 (1999) (record reveals appellant had multiple discussions with counsel and considered their advice).

{¶40} Mr. Anderson explained to the trial court that his appointed counsel had been "pushing" a plea deal but that he "never asked for jail time" and "always asked for probation and stuff." Further, he felt like his counsel "did not feel like he had a chance to prove his innocence in court."

10

{¶41} Although Mr. Anderson may not have liked his counsel's advice, three of the charges against him were subject to a presumption in favor of prison, in addition to his extensive criminal history. Even if an attorney does not believe in his or her client's innocence, "counsel's belief in their client's guilt is not good cause for substitution. '"A lawyer has a duty to give the accused an honest appraisal of the case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism."'" *Id.*, quoting *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir.1981), quoting *Brown v. United States*, 264 F.2d 363, 369 (D.C.Cir.1959) (Burger, J., concurring in part). *See also State v. Ortiz-Santiago*, 2017-Ohio-8878, 100 N.E.3d 1127, ¶ 26-27 (8th Dist.) (counsel's advice was not a breakdown in the attorney-client relationship that jeopardized appellant to ineffective assistance of counsel; rather, his attorney was simply trying to "minimize his risk" by advising him to plead guilty).

{¶42} In sum, Mr. Anderson's complaints are not substantiated by the record, and he fails to evidence a breakdown of his relationship with counsel, of communication or otherwise. Thus, we cannot say the trial court abused its discretion by denying his request to substitute appointed counsel when he was not entitled to substitution.

{¶43} Mr. Anderson's first assignment of error is without merit.

**Ineffective Assistance of Counsel**

{¶44} In his second assignment of error, Mr. Anderson contends his defense counsel was ineffective by failing to object to the presentation of three witnesses via Zoom, which violated his Sixth Amendment right to confrontation of witnesses, and by failing to object to a hearsay statement made by Mr. Smith that was introduced through the testimony of Detective Gabriel Sleigh ("Det. Sleigh").

11

Case No. 2023-L-099

{¶45} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness * * * considering all the circumstances." *Id.* at 688.

{¶46} "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶47} We cannot find Mr. Anderson's counsel was ineffective for failing to raise a Sixth Amendment right to confrontation issue because any objection from defense counsel would be to the authenticity of the records, i.e., the nature of the evidence being introduced. The state met the authentication and self-authentication and notice requirements of Evid.R. 901 and 902 (13) necessary to admit the cell phone and cable data records in this case.

{¶48} "'Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be.'" *State v. Richardson*, 2016-Ohio-8081, 75 N.E.3d 831, ¶ 42 (2d Dist.), quoting *State v. Simmons*,

12

2d Dist. Montgomery No. 24009, 2011-Ohio-2068, ¶ 12. The threshold standard for authenticating evidence is low, and Evid.R. 901(B) provides examples of numerous ways that the authentication requirement may be satisfied. The most commonly used method is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1). *Id.*

{¶49} Evid.R. 902(13) provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: * * * Certified records generated by an electronic process or system. A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Evid.R. 902(11) or (12). The proponent must also meet the notice requirements of Evid.R. 902(11)."

{¶50} The records in question were properly certified by the qualified representative of the various providers, and the state gave notice of its intent to introduce these records. Mr. Anderson fails on appeal to articulate any issue with the *authenticity* of the documents, as opposed to a Confrontation Clause challenge to the documents sought to be introduced, which would be the only grounds upon which to challenge this evidence.

{¶51} In other words, the purpose of the testimonies of the records custodians in the trial was to authenticate and certify the provider records so they could be admitted into evidence since they had "'enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 40, quoting 5 McLaughlin, *Weinstein's Federal Evidence*, Section 803.08[8][a] (2d Ed.2009).

13

{¶52} Similarly, Mr. Anderson fails to identify a hearsay statement that would trigger an objection. Mr. Anderson contends his defense counsel was ineffective for failing to object to the following question by Det. Sleigh during Mr. Anderson's police interview, which he alleges was a hearsay statement made by Mr. Smith, who was not available to testify:

{¶53} "[Det. Sleigh]: Does [Mr. Smith] live kind of across the way from you?

{¶54} "[Mr. Anderson]: Yeah.

{¶55} "* * *

{¶56} "[Det. Sleigh]" That's Lavell [Smith]?.

{¶57} "[Mr. Anderson]: Yeah.

{¶58} "[Det. Sleigh]: So he brought that over your house to hook it up?

{¶59} "[Mr. Anderson]: Yeah. Not even so much hook it up. He wanted me – because I had an Xbox, so he wanted me to show him like what to do and all that stuff. Other than that, that was about the only thing like as far as I can think of, but –

{¶60} "[Det. Sleigh]: *What would you you [sic] say if Lavell said he bought that from you?*

{¶61} "[Mr. Anderson]: I doubt it, because he wouldn't say that because I never sold it to him. I never even had any stuff in my possession, but obviously if so that timing I never knew it was from connecting like and stuff, so…" (Emphasis added.)

{¶62} As the colloquy reveals, Det. Sleigh asked Mr. Anderson a hypothetical question to elicit a confession. Questions are not normally hearsay because they cannot be proven true or false. *See State v. Holloway*, 10th Dist. Franklin No. 02AP-984, 2003-Ohio-3298, ¶ 29.

14

{¶63} "'Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).'" *State v. Rice*, 11th Dist. Ashtabula No. 2009-A-0034, 2010-Ohio-1638, ¶ 21, quoting *In re Miller*, 11th Dist. Ashtabula No. 2006-A-0046, 2007-Ohio-2170, ¶ 30.

{¶64} In short, we cannot find Mr. Anderson's counsel was ineffective for failing to object to a hearsay statement because there was no hearsay statement that would trigger an objection.

{¶65} Mr. Anderson's second assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶66} In his third assignment of error, Mr. Anderson contends the manifest weight of the evidence does not support the jury's verdict because the state failed to put forth evidence regarding the Apple MacBook Pro laptop computer, identifying the principal offender, and/or whether the Nintendo Switch listed for sale on Mr. Anderson's OfferUp page was the one stolen from Ms. Provitt's apartment.

{¶67} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury [or trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

15

"When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶68} "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.* * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶69} Fundamentally, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶70} From the state's evidence, the jury could conclude that Mr. Anderson was at the scene of the crime and in possession of the stolen electronics shortly after the burglary occurred and assisted in selling or moving them in some fashion. The burglary occurred while Mr. Anderson was hiding in Ms. Provitt's bedroom. He had left the

16

bedroom shortly before the burglary to use the bathroom. Ms. Provitt testified that she had locked both the kitchen and living room doors, and she reported her keys stolen, which were later found in the apartment complex's parking lot. Both Mr. Anderson and Mr. Smith were in the Willoughby area during the burglary and in the Cleveland area a few hours later.

{¶71} Several hours after the burglary, someone at Mr. Anderson's apartment logged onto the internet from the stolen Xbox using Mr. Anderson's internet service. The following day, someone at Mr. Smith's house began logging onto the internet from the same Xbox using Mr. Smith's internet service. Mr. Smith gave the stolen Xbox to his probation officer, who in turn handed it over to the police. Mr. Anderson disclosed the online marketplace, OfferUp, as a site where he buys and sells electronics. A subpoena of the records for his account showed he posted a Nintendo Switch for sale that was identical to the one stolen, which he successfully sold that same day.

{¶72} Simply because much of the state's evidence was circumstantial does not mean the jury's verdicts are against the manifest weight of the evidence. "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. Circumstantial evidence has been defined as "testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Marhefka*, 2016-Ohio-7158, 71 N.E.3d 1229, ¶ 22 (11th Dist.). An inference is "'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *Id.*, quoting *State v. Nevius*, 147 Ohio St. 263, 274, 71 N.E.2d 258 (1947). It consequently follows that "'when circumstantial evidence forms

17

the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be rationally inferred according to common experience.'" *Id.*, quoting *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶ 34.

{¶73} Further, there is no requirement for the state to identify the principal offender for Mr. Anderson to be found guilty of complicity. As we stated in *State v. Ramirez*, 11th Dist. Lake No. 2010-L-040, 2011-Ohio-6335, "[i]n order to satisfy the elements of complicity, the state is only obligated to prove that a principal offender did commit the underlying offense, and that the defendant aided and abetted in the manner." *Id.* at ¶ 19; *see also In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, paragraph one of the syllabus (the identity of the principal is not an element that the state must prove to establish the offense of complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2)); *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 247 (under Ohio law, there is no distinction between a defendant convicted as a principal offender or of complicity).

{¶74} Quite simply, this is not the exceptional case in which the evidence weighs heavily against Mr. Anderson's convictions.

{¶75} Mr. Anderson's third assignment of error is without merit.

{¶76} The judgment of the Lake County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

ROBERT J. PATTON, J.,

concur.


18

Case No. 2023-L-099