[Cite as *State v. Houtz*, 2025-Ohio-1008.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

DWAYNE WALLACE HOUTZ,

    DEFENDANT-APPELLANT.

CASE NO. 6-24-05

O P I N I O N

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

DWAYNE WALLACE HOUTZ,

    DEFENDANT-APPELLANT.

CASE NO. 6-24-06

O P I N I O N

---

**Appeals from Hardin County Common Pleas Court**
**Trial Court Nos. CRI 20222199 and CRI 20232178**

**Judgments Affirmed**

**Date of Decision: March 24, 2025**

---

APPEARANCES:

    *Michael B. Kelley* **for Appellant**

    *McKenzie J. Klingler* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Dwayne W. Houtz ("Houtz"), appeals the April 11, 2024 judgments of sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2} On December 15, 2022, the Hardin County Grand Jury indicted Houtz in case number CRI 20222199 on fourteen drug-related felony offenses, including Counts One and Five of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(a), fourth-degree felonies, and Count Thirteen of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(1), (C)(9)(a), a fifth-degree felony.

{¶3} At his initial appearance on January 6, 2023, the trial court appointed counsel for Houtz, and he entered not guilty pleas to the counts in the indictment. Houtz appeared for a change-of-plea hearing on March 21, 2023 where, pursuant to a negotiated-plea agreement, Houtz withdrew his guilty pleas with respect to Counts One, Five, and Thirteen of the indictment and entered guilty pleas to those charges. In exchange, the State recommended dismissal of the remaining counts. The trial court accepted Houtz's guilty pleas and found him guilty of the three charges. The trial court ordered a PSI and continued the matter for sentencing.

**{¶4}** On May 3, 2023, Houtz appeared for a sentencing hearing. The trial court placed Houtz on five years of community control. The trial court also ordered Houtz to serve 130 days of local incarceration, with credit for 127 days served. Additionally, the trial court ordered Houtz to complete a program at a community based correctional facility or enter into the Hardin County Recovery Court program. The trial court also ordered Houtz to pay fines and court-appointed counsel fees, and to serve 80 hours of community service. The trial court warned Houtz that a violation of the terms of his community control could result in a sentence of 18 months in prison on each of Counts One and Five and 12 months in prison on Count Thirteen, which could be ordered to be served consecutively.

**{¶5}** Houtz was subsequently accepted into the Hardin County Recovery Court on September 27, 2023. However, on October 2, 2023, Houtz's probation officer advised the trial court that Houtz had absconded supervision, and a warrant was issued for Houtz's arrest.

**{¶6}** On October 12, 2023, Houtz was indicted in Hardin County case number CRI 20232178 on a single count of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. At his initial appearance on February 1, 2024, the trial court appointed counsel to represent Houtz, and he entered a not-guilty plea.

{¶7} That same day, on February 1, 2024, the State filed a motion to revoke Houtz's supervision in CRI 20222199. The State alleged that Houtz had absconded from supervision and had violated the terms of his participation in Hardin County Recovery Court. The following day, the trial court suspended Houtz's participation in the Hardin County Recovery Court. Shortly thereafter, the trial court appointed the counsel who was representing him in the proceedings in CRI 20232178 to also represent him on the motion to revoke supervision and Recovery Court proceedings in case number CRI 20222199.

{¶8} On March 25, 2024, Houtz appeared for a hearing on the violation of community control in case number CRI 20222199 and a final pretrial in case number CRI 20232178. With respect to CRI 20222199, Houtz admitted he violated the terms of his supervision as detailed in the State's motion. The trial court found that Houtz had violated the terms of his supervision and continued the matter for disposition. With respect to case number CRI 20232178, the parties placed the proposed plea negotiations on the record. The attendant judgment entry indicates that the trial court "inquired of [Houtz] whether he and his attorney were working well with one another, to which he stated that they were." (Case No. CRI 20232178, Doc. No. 16).

{¶9} On April 11, 2024, the parties appeared for disposition hearing on the violation of community control in case number CRI 20222199 and a change-of plea

hearing on case number CRI 20232178. Pursuant to a negotiated-plea agreement, the State made an oral motion to amend the single count from tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony, to attempted tampering with evidence in violation of R.C. 2923.02(A) and 2921.12(A)(1), (B), a fourth-degree felony. Houtz then withdrew his not-guilty plea in case number CRI 20232178 and entered a guilty plea to the amended charge. The trial court accepted Houtz's plea and found him guilty thereof.

{¶10} The trial court then proceeded to disposition in case number CRI 20222199 and sentencing in case number CRI 20232178. With respect to case number CRI 20222199, the trial court sentenced Houtz to 18 months in prison on Count One (aggravated trafficking in drugs), 18 months in prison on Count Five (aggravated trafficking in drugs), and 12 months on Count Thirteen (trafficking in a fentanyl-related compound). The trial court ordered the sentences to run consecutively to each other for an aggregate term of 48 months in prison. With respect to case number CRI 20232178, the trial court sentenced Houtz to 18 months in prison. Further, the court ordered the sentences in the two cases to run consecutively to each other for an aggregate term of 66 months in prison. The trial court also ordered Houtz to serve an addition prison term of 1,209 days for violations of post release control to be served prior to and consecutively to the

aggregate term of 66 months in prison. The judgment entries of sentence were filed that same day.

**{¶11}** On April 15, 2024, Houtz filed notices of appeal in both cases. The matters were consolidated, and he raises three assignments of error for our review.

### First Assignment of Error

**The trial court's sentence is contrary to law and violates ORC 2953.08 as the Court erroneously imposed maximum sentences, which is plain error.**

**{¶12}** In his first assignment of error, Houtz argues that his sentences are contrary to law. Specifically, Houtz argues that his sentences violate R.C. 2953.08. For the reasons that follow, we disagree.

*Standard of Review*

**{¶13}** Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Relevant Authority*

**{¶14}** "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 2014-Ohio-5485, ¶ 9. A sentence imposed within the statutory range is generally valid so long as the trial court considered the applicable sentencing policies that apply to every felony sentencing, including those contained in R.C. 2929.11, and the sentencing factors of 2929.12. *See State v. Watts*, 2020-Ohio-5572, ¶ 10 and 14 (3d Dist.); *State v. Maggette*, 2016-Ohio-5554, ¶ 31 (3d Dist.).

**{¶15}** R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs courts to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* In addition, R.C. 2929.11(B) instructs that a sentence imposed for a felony "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing . . ., commensurate with and not demeaning to the seriousness of the

offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶16}** "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10, citing R.C. 2929.12(A). In addition, the trial court must consider "the factors set forth in [R.C. 2929.12(F)] pertaining to the offender's service in the armed forces of the United States." R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2992.12.'" *Smith* at ¶ 15, quoting *State v. Brimacombe*, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000). Neither statute "requires a trial court to make any specific factual findings on the record." *State v. Jones*, 2020-Ohio-6729, ¶ 20; *see also* R.C. 2929.11 and 2929.12.

**{¶17}** In considering R.C. 2929.11 and 2929.12 as they relate to felony-sentencing appeals, the Supreme Court of Ohio has further limited appellate review by holding that "R.C. 2953.08(G)(2)(a) clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12," and subdivision (b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and

2929.12." *Jones* at ¶ 31, 34, 39 ("an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)"). Thus, R.C. 2953.08(G)(2) does not allow "an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at 42; *see also State v. Bryant*, 2022-Ohio-1878, ¶ 22. However, "when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law," and claims that raise those "types of issues are therefore reviewable." *Bryant* at ¶ 22 (finding the trial court increased the sentence based on an impermissible consideration).

*Analysis*

{¶18} Houtz does not attack any of the procedural aspects in the trial court's sentencing and cites no authority apart from a citation to R.C. 2953.08 as providing him with the right to appeal. He has not argued that the case involves any of the findings under the statutes identified in R.C. 2953.08(G)(2)(a), and he has not argued that his sentences are outside the statutory range. He has also not specifically argued that the sentence was based on factors or considerations extraneous to those permitted by R.C. 2929.11 or 2929.12.

{¶19} The court sentenced Houtz to 18 months in prison for fourth-degree felony aggravated trafficking in drugs and attempted tampering with evidence and 12 months in prison for fifth-degree felony trafficking in a fentanyl-related compound. Thus, Houtz's sentences fall within the respective statutory ranges. *See* R.C. 2929.14(A)(4); R.C. 2929.14(A)(5).

{¶20} Further, the record reflects that the trial court considered R.C. 2929.11 and 2929.12 when fashioning Houtz's sentence. Specifically, at the sentencing hearing, the trial court indicated it considered "what's necessary to protect the public from future crime by Mr. Houtz, what's necessary to punish Mr. Houtz, what's necessary to rehabilitate him if that can be done" and "the need for incapacitating him [and] deterring him in the future." (Apr. 11, 2024 Tr. at 32, 34). The trial court also indicated that it looked at the seriousness and recidivism factors and made detailed findings relating to those factors. (*Id.* at 32-36).

{¶21} Additionally, the judgment entries of sentencing explicitly reference R.C. 2929.11 and 2929.12. With respect to case number CRI 20222199, the judgment entry stated that the trial court found that "a prison sentence for such violations is consistent with the purposes and principles of sentencing under Ohio Revised Code Section 2929.11 because a prison sentence is reasonably necessary to punish the offender and to deter, rehabilitate, and incapacitate the offender in order to protect the public from future crime, and would not place any unnecessary burden

on governmental resources." (Case No. CRI 20222199, Doc. No. 55). The trial court made similar findings in the judgment entry in case number CRI 20232178, noting that it had considered "the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors in Ohio Revised Code Section 2929.12." (Case No. CRI 20232178, Doc. No. 22). Furthermore, the trial court detailed specifically which of the factors under R.C. 2929.12 it considered when fashioning Houtz's sentence. (*Id.*). Therefore, because Houtz's prison sentence is within the applicable statutory range and the record supports that the trial court fulfilled its obligation of considering R.C. 2929.11 and 2929.12, Houtz's sentence is valid. *See Watts*, 2020-Ohio-5572, ¶ 14.

**{¶22}** Yet, Houtz argues that his sentences were contrary to law on the basis that they violate R.C. 2953.08(A)(1). However, in his argument, Houtz appears to conflate the statute's allowance for an appeal as of right when a maximum sentence is imposed with a prohibition against the imposition of a maximum sentence. Accordingly, Houtz's argument is not well taken.

**{¶23}** Houtz's first assignment of error is overruled.

## Second Assignment of Error

**The trial court erred when it accepted the Appellant's guilty plea and admission to the community control violation as both the plea and admission were not knowingly, intelligently, and voluntarily given.**

**Third Assignment of Error**

**The trial court erred when it failed to appoint alternate counsel for Appellant, as Appellant indicated a breakdown in the attorney-client relationship that deprived Appellant of effective representation.**

{¶24} In his second assignment of error, Houtz argues that his guilty plea and admission to the community-control violation were not made knowingly, intelligently, and voluntarily because it was "clear that [Houtz] had an attitude of defeat, hopelessness, and lack of confidence in his attorney and the judicial process." (Appellant's Brief at 8). In his third assignment of error, Houtz argues that the trial court erred by failing to appoint new trial counsel after Houtz indicated he was no longer satisfied with his trial counsel's representation.

{¶25} At the onset of the hearing, the parties indicated that they reached a "global resolution." (Apr. 11, 2024 Tr. at 3-4). Houtz's trial counsel indicated that Houtz, through a friend or family member, reached out to trial counsel the previous week to inquire if the plea deal that was entered onto the record at the final pretrial was "still on the table." (*Id.* at 4). Houtz's trial counsel informed the contact that the offer had expired, but trial counsel did speak to the State the previous day who indicated that "[the State] had heard that Mr. Houtz might be interested in the previous deal." (*Id.*). When trial counsel informed the State that Houtz may be interested in the previously-expired plea deal, the State and trial counsel worked

together to quickly get the matter onto the court's docket so as to avoid the fast approaching trial date. (*Id.*).

{¶26} Houtz's counsel stated that he met with Houtz that morning and at first Houtz was "inclined to take the [previously offered plea] deal" but then "became disgruntled with [trial counsel's] representation" and did not want to take the deal and indicated that counsel was "fired." (*Id.*).

Houtz then engaged in the following exchange with the trial court:

[Defendant]: I need a different lawyer.

[Trial court]: Okay. You realize it's kind of problematic when the prosecutor knows what you're doing before your own lawyer knows what you're doing. I don't know how you expect the man to do a job for you.

[Defendant]: I'm saying he hasn't did [sic] a job. I haven't got my discovery packet or nothing. We go to trial Tuesday.

[Trial court]: We're going to trial on Tuesday. That is a fact. So you're going to trial on Tuesday with [trial counsel] as standby counsel…

[Defendant]: I'm saying I'm not though.

[Trial court]: --or as counsel.

[Defendant]: I have a right to – to an adequate lawyer. He's not doing nothing, sir.

[Trial court]: You do have a right to an adequate lawyer, and I've appointed to represent you one of the best attorneys I have on my appointment list. . . He's worked out deals for you a couple of times. You've waited till a matter

of days before your trial[.]. . . [F]irst of all, . . . you turned down a deal. It was off the table. He got the deal back on the table for you at your request, and when he contacted the prosecutor, they knew what you wanted before your own attorney even knew. So you're obviously talking to some other people because it got back to the prosecutor. I don't know if that's in jail, I don't know if it's relatives, I don't know how that happens, but your lawyer should be the first person to know.

You have an obligation. You know, this is not a one-way street that only [trial counsel] has obligations to you. You have obligations to the attorney. He can only help you as much as you help yourself, and the prosecutor knowing what you're doing before your own lawyer does is not cooperating with your attorney. You're going to trial on Tuesday and you are either having [trial counsel] represent you or you're having standby counsel and representing yourself. One or the other. Those are your options. Because you've waited to the last minute. You've screwed around. You've gone back and forth, and you're communicating with the State - -

[Defendant]: I'm not - - I haven't communicated with nobody.

[Trial court]: - - outside of - -

[Defendant]: I'm saying I have rights. That's cool. I'll appeal it. You can do whatever you want to do. I'll appeal it.

[Trial court]: You can certainly appeal. That is your right.

[Defendant]: That's fine.

[Trial court]: But we are going to trial as scheduled.

[Defendant]: I know what my rights are.

-14-

(Apr. 11, 2024 Tr. at 5-7).

**{¶27}** The parties then placed the plea offer on the record, to wit: Houtz would agree to plead guilty to an attempted offense, reducing the charge from third-degree tampering with evidence to fourth-degree attempted tampering with evidence. The State had also agreed not to pursue an additional fourth-degree felony escape charge. The State indicated that although the original recommendation was for the sentences to run consecutively, the State would now agree to defer the issue to the trial court's judgment. The parties then engaged in the following conversation with the trial court:

> [Trial court]:      So, Mr. Houtz, do you understand that the State - - number one, if you turn this down, they can bring an escape charge against you. That's an F4. That would be another potential 18 months. Number one. Number two: If it goes to trial and you get convicted, it will be an F3, which means potentially up to 36 months as opposed to the most you can get on the reduced charge on the table is 18 months. So, you're looking at a difference of - -
>
> [Trial counsel]:    Three years, Your Honor.
>
> [Trial court]:      Three years potentially.
>
> [Trial counsel]:    Do you want to do this?
>
> [Defendant]:      Yeah, I do. Not that it matters anyways. What's the date?

[Trial counsel]: 4/11. You've seen this before, right?

[State]: You can strike the consecutive, too, on that one page. You don't have to agree to that. You guys can pitch what you want.

. . .

[Trial counsel]: Okay. So we're taking that out, so we're not agreeing to consecutive.

[Defendant]: It don't matter.

[Trial counsel]: I know. At least we can ask, okay? He'll feel sorry for you. All right?

(Apr. 11, 2024 Tr. at 8-9).

Houtz signed the written plea. The trial court then addressed Houtz:

[Trial court]: Do you want to go forward with this plea with [trial counsel] as your attorney?

[Defendant]: Sure. It's not like I have much of a choice.

[Trial court]: You do have a choice. You absolutely - -

[Defendant]: I don't have a choice.

[Trial court]: -- have a choice.

[Defendant]: What the choice? Eight and a half years or ten.

[Trial court]: You have a choice of going forward with the plea agreement today or going to trial on Tuesday. We plainly put on the record what your exposure was. It is your choice. If you do not want to do this today, you have every right to have a trial and a jury of your peers

-16-

decide whether you are guilty or innocent. Do you understand?

[Defendant]: Yeah, yep.

[Trial court]: Is anybody forcing you in any way or promising you anything other than what was just said on the record - -

[Defendant]: No.

[Trial court]: - - in order to get you to do this plea?

[Defendant]: No.

[Trial court]: Are you doing it freely, knowingly, and voluntarily?

[Defendant]: Yep.

[Trial court]: Tell me what voluntary means to you.

[Defendant]: Of my own will.

(Apr. 11, 2024 Tr. at 10-11).

**{¶28}** The trial court next engaged in a Crim.R. 11(C)(2) plea colloquy. Houtz then entered a guilty plea to the amended charge in case number CRI 20232178, and the trial court found Houtz guilty. (Apr. 11, 2024 Tr. at 21-22).

**{¶29}** Houtz now argues that his plea was not knowing, intelligent, and voluntary. He also argues that the trial court erred by not granting his request for a new attorney.

*Relevant Authority: Change of Plea*

**{¶30}** "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "If the plea was not made knowingly, intelligently, or voluntarily, enforcement of that plea is unconstitutional." *Id.*

**{¶31}** Crim.R. 11, which outlines the procedures that trial courts must follow when accepting pleas, "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id.* at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975).

*Analysis: Change of Plea*

**{¶32}** Initially, we note that Houtz merges his argument challenging the trial court's colloquy with respect to his admission to the community-control violation with his change of plea. However, "Ohio courts have repeatedly stated that a community control revocation hearing is not a criminal trial." *State v. Hampton*, 2023-Ohio-1591, ¶ 10 (2d Dist.). "Accordingly, the requirements for a full Crim.R. 11(C)(2) plea colloquy do not apply to a community-control-violation hearing, because a defendant faced with revocation of community control is not afforded the full spectrum of rights given to a defendant in a criminal prosecution." *Id. See State*

*v. Phelps*, 2016-Ohio-4673, ¶ 12 (1st Dist.) ("[T]he Crim.R. 11 colloquy requirements do not apply to plea to community control violations."). Accordingly, to the extent Houtz argues that his admission to the community-control violation was involuntary because the trial court did not engage in a full Crim.R. 11 plea colloquy, that argument fails.

{¶33} Further, notably, with respect to case number CRI 20232178, Houtz does not argue that the trial court's Crim.R. 11(C)(2) plea colloquy was deficient. Rather, he alleges that his voluntariness was overcome. In support of this argument, Houtz references several remarks he made at the April 11, 2024 hearing, indicating that he felt like he did not have a choice.

{¶34} However, after reviewing the comments Houtz references in context, it is evident that Houtz entered his plea of his own accord and that his plea was knowing, intelligent, and voluntary. The record indicates that after turning down the State's plea offer at the previous pretrial hearing, Houtz experienced second thoughts. Houtz expressed a desire to accept the expired plea offer, and the State was somehow made aware of Houtz's change of heart, despite Houtz's lack of communication with his trial counsel. Thus, the record contradicts Houtz's allegation that his decision to plea was made hastily and "frantically."

{¶35} At the beginning of the change-of-plea hearing, Houtz did express some reservations regarding entering the plea of guilty; however, the record

indicates that after the parties reiterated the plea offer on the record, Houtz, of his own accord, indicated that he wanted to enter into the plea agreement. Thereafter, the trial court engaged in a lengthy dialogue with Houtz ensuring that Houtz indeed made the change-of-plea of his own free will, with the trial court going as far as asking Houtz to define what "voluntary" meant to him.

**{¶36}** Accordingly, after reviewing Houtz's arguments in concert with the record, we find that Houtz's guilty plea was knowingly, intelligently, and voluntarily made.

**{¶37}** Thus, Houtz's second assignment of error is overruled.

*Relevant Authority: Substitution of Counsel*

**{¶38}** "The decision whether to remove court-appointed counsel and allow substitution of new counsel is within the sound discretion of the trial court; its decision will not be reversed absent and abuse of discretion." *State v. Stein*, 2018-Ohio-2345, ¶ 19 (3d Dist.). "As a general proposition, an indigent criminal defendant does not have a constitutional right to choose the attorney who will represent him at the expense of the state; rather, he is only entitled to competent legal representation." *State v. Anderson*, 2024-Ohio-2505, ¶ 33 (11th Dist.). Accordingly, the request of a defendant to discharge his court appointed counsel is granted only if the defendant can "'show a breakdown in the attorney client relationship of such a magnitude as to jeopardize the defendant's right to effective

assistance of counsel.'" *State v. Jackson*, 2006-Ohio-2651, ¶ 43 (11th Dist.),

quoting *State v. Coleman*, 37 Ohio St.3d 286 (1988), paragraph four of the syllabus.

> In applying this basic standard, Ohio courts have recognized three examples of good cause that would warrant the discharge of court-appointed counsel: (1) a conflict of interest, (2) a complete breakdown of communication, and (3) an irreconcilable conflict which could cause an unjust result. In light of the nature of the three examples, it has been further held that the substitution of counsel should be allowed only if extreme circumstances exist.

*Anderson* at ¶ 35. Furthermore, "the right to counsel must be balanced against the

court's authority to control its docket, as well as its awareness a 'demand for counsel

may be utilized as a way to delay the proceedings or trifle with the court.'" *State v.*

*Evans*, 2023-Ohio-237, ¶ 14 (5th Dist.), quoting *United States v. Krzyske*, 836 F.2d

1013, 1017 (C.A. 6 1988).

*Analysis: Substitution of Counsel*

**{¶39}** After reviewing the record, we find that the trial court did not abuse

its discretion by denying Houtz's request for new counsel. Here, Houtz argues that

he was entitled to new counsel on the grounds that he and his trial counsel had a

breakdown of communication. However, a review of the record indicates that any

such breakdown in communication was due, at least in part, to Houtz's lack of

communication with his trial counsel. The trial court referenced Houtz's role in

maintaining communication with his trial counsel when he noted with concern that

Houtz expressed his desire to enter into the then-expired plea deal not to his trial

counsel, but to some third party, who in turn, communicated that information with the State.

**{¶40}** The record further indicates that, despite Houtz's lack of communication, trial counsel was successful in negotiating with the State and getting the State to agree to honor the expired plea agreement that reduced the charge from third-degree felony tampering with evidence to fourth-degree felony attempted tampering with evidence and to not file a fourth-degree felony escape charge. The State also agreed to allow Houtz to argue that the sentences in the two cases should be served concurrently in spite of the parties' previous agreement to recommend the sentences be served consecutively.

**{¶41}** Additionally, as the record indicates, the matter was scheduled to go to trial in a matter of days, and the trial court expressed reluctance to appoint new counsel so close to trial, particularly in light of the trial court's perception that Houtz had "waited until the last minute" and "gone back and forth" in deciding whether to accept the plea offer. (Apr. 11, 2024 Tr. at 5-7). *See State v. Lawson*, 2012-Ohio-1050, ¶ 24 (8th Dist.).

**{¶42}** Accordingly, we find that Houtz failed to establish that a breakdown of the attorney-client relationship had occurred. *State v. Sanders*, 2024-Ohio-3365, ¶ 37-39 (3d Dist.).

**{¶43}** Houtz's third assignment of error is overruled.

*Conclusion*

**{¶44}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the Hardin County Court of Common Pleas.

***Judgments Affirmed***

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

**/jlm**